**Thomas J. DILLON, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 97–3138.**

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1999.

Decided July 21, 1999.

Brian Wolfman (briefed), Alan B. Morrison (briefed), Public Citizen Litigation Group, Washington, D.C., for Amici Curiae.

Douglas A. Trant (argued and briefed), Knoxville, Tennessee, for Petitioner–Appellant.

Louis M. Fischer (argued and briefed), Department of Justice, Criminal Division, Appellate Section, Washington, D.C.; James E. Rattan, Asst. U.S. Atty., Office of the U.S. Attorney, Columbus, OH, for Respondent–Appellee.

Galen J. White, Jr. (argued and briefed), Louisville, Kentucky, for amicus curiae.

Before: MARTIN, Chief Judge; MERRITT, KENNEDY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, Circuit Judges.

NORRIS, J., delivered the opinion of the court, in which MARTIN, C. J., MERRITT, KENNEDY, NELSON, BOGGS, SILER, DAUGHTREY, MOORE, and COLE, JJ., joined. RYAN, J., (pp. 558–59), delivered a separate dissenting opinion, in which SUHRHEINRICH and BATCHELDER, JJ., joined. CLAY, J. (pp. 559–66), delivered a separate dissenting opinion, in which GILMAN, J., joined except for Part I, with GILMAN, J. (p. 566), also delivering a separate dissenting opinion.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Pursuant to Fed. R. App. P. 35(a), a majority of the active judges of this court voted to rehear en banc *Dillon v. United States*, No. 97–3138, (6th Cir. Nov. 10, 1998) (unpublished), in an attempt to set forth the precise requirements imposed by Fed. R.App. P. 3(c) (contents of the notice of appeal). Relying upon another recent decision of this court, *United States v. Webb*, 157 F.3d 451 (6th Cir.1998) (per curiam), *cert. denied*, —— U.S. ——, 119 S.Ct. 2019, 143 L.Ed.2d 1031 (1999), the *Dillon* panel had dismissed petitioner's appeal for lack of jurisdiction because the notice of appeal failed, as specified by Rule 3(c)(1)(C), to "name the court to which the appeal is taken." We now hold that, while the requirements of Rule 3(c) are jurisdictional, *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315–16, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), in the sense that a notice of appeal must explicitly name the court to which an appeal is taken when there is more than one potential appellate forum, where only one avenue of appeal exists, Rule 3(c)(1)(C) is satisfied even if the notice of appeal does not name the appellate court. Under the latter circumstances, filing the notice of appeal with the clerk of the district court from whose judgment the appeal is taken has the practical effect of designating the appropriate court of appeals and thereby eliminating any possible confusion with respect to the appellate forum.

In the case now before us, the Sixth Circuit represented the only appellate court available to petitioner. *See* 28 U.S.C. § 2253(a) (in a proceeding under section 2255 before a district judge, the appeal shall lie in the court of appeals for the circuit in which the proceeding is held). Under our holding today, therefore, the notice of appeal was not defective because petitioner did not have a choice of forum and filed his notice of appeal in the district court that rendered judgment. According-

ly, we remand to the original panel for further proceedings.

In 1993, Rule 3(c) was amended in order to "reduce the amount of satellite litigation spawned by the Supreme Court's decision in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)." Advisory Committee Notes to 1993 Amendments. While *Torres* specifically concerned the proper construction of Rule 3(c)(1)(A), it made clear that the entire rule was jurisdictional in nature. *Id.* at 315–16, 108 S.Ct. 2405. The 1993 amendments were implemented in an attempt to soften the practical effect of this holding. Rule 3(c)(4) now reads:

> An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

As the Advisory Committee Notes to the 1993 amendments observe, "if a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." *See also* 16A Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 3d § 3949.4 ("These new provisions should ... reduce substantially the number of appeals aborted for no reason.").

Although the 1993 amendments were aimed at ameliorating the effect of Rule 3(c)(1)(A), we see no reason why their underlying rationale does not apply with equal force to Rule 3(c)(1)(C). When there is only one appellate forum available to a litigant, "there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward" if, through inadvertence, an appellant has failed to name the court to which the appeal is taken.

In reaching this conclusion, we are mindful that the Court in *Torres* cautioned, "although a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." *Torres*, 487 U.S. at 317, 108 S.Ct. 2405. It is not our intention in any way to "waive" the jurisdictional requirement that a notice of appeal designate the court to which the appeal is taken. However, when there is only one possible appellate forum, and no information or action contrary to the proper forum appears on the face of the papers, the filing of a notice of appeal has the practical effect of "naming" that forum. In contrast, when an appeal may be taken to more than one appellate court, failure to designate the court of appeal will result in dismissal of the appeal for lack of jurisdiction.[1]

Petitioner's appeal is re-instated and this cause is **remanded** for further proceedings to the panel of this court that originally considered it.

RYAN, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion, although I must do so separately because my fellow dissenters have said some things with which I cannot agree.

Federal Rule of Appellate Procedure 3(c)(1)(C) explicitly and unambiguously requires that a notice of appeal "name the court to which the appeal is taken." And, it is incontrovertibly settled that the rule is jurisdictional. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405,

---

1. For instance, some circuits have held that a claimant for black lung benefits may appeal in any circuit in which he or she worked and was exposed to danger. *See, e.g., Hon v. O.W.C.P.*, 699 F.2d 441, 444 (8th Cir.1983). Similarly, 26 U.S.C. § 7482(a) vests jurisdiction over appeals from the Tax Court in all federal courts of appeal except for the federal circuit. *See also* 29 U.S.C. § 160(f) (permitting appeals from NLRB actions in various circuit courts). In other words, while relatively small as a percentage of appeals to this court, there are a significant number of cases that require explicit designation of the court of appeals in order to comply with Rule 3(c)(1)(C).

101 L.Ed.2d 285 (1988). So, if the rule announced in *Torres* means anything, it means that the failure to "name the court to which the appeal is taken" in the notice of appeal deprives the appellate court in which the appeal is filed of jurisdiction in the case.

Dillon did not, in his claim of appeal, state the name of the court to which the appeal was taken. Therefore, this court is without jurisdiction to entertain the appeal. In syllogism form, the proposition would go something like this:

Major premise: No appellate court has jurisdiction of an appeal in which the notice of appeal fails to name the court to which the appeal is taken.

Minor premise: But Dillon's notice of appeal fails to name the court to ·which the appeal is taken.

Conclusion: Therefore, no appellate court has jurisdiction of Dillon's appeal.

But the members of the majority dislike the idea that subrule (C), like (A) and (B), should be jurisdictional; some think the rule is unnecessarily harsh, unjustly restrictive, and ill-considered; others think we ought to ignore failure to comply with the rule because many lawyers have been ignoring it. And so the majority has today suspended the requirement of (C) that the notice of appeal must "name the court to which the appeal is taken" if it turns out that the flawed appeal is filed in the only court to which a proper appeal could properly have been taken. If the United States Supreme Court had not declared in *Torres* that compliance with all of Rule 3(c)(1) is jurisdictional, the majority's strained effort to substitute its own rule for the plain English requirements of Congress's rule might be defensible. But the Supreme Court has said that compliance with the rule is jurisdictional and, therefore, noncompliance with it must necessarily defeat jurisdiction.

This is not rocket science; it is plain English. We do not "apply" a rule that establishes a condition precedent to our exercise of jurisdiction by exercising jurisdiction despite noncompliance with the rule when in our judgment the condition precedent is burdensome, unwise, and ignored by some members of the bar. In doing that, we "misapply" the rule.

To the credit of the signors of the majority opinion, they do not claim that there was "substantial compliance" with the rule in this case or that Dillon's notice of appeal contained some language somewhere that is the "functional equivalent" of naming the court to which his appeal was to be taken. My colleagues simply hold in a remarkable *ipse dixit* that compliance with subrule (C), albeit jurisdictional, may hereafter be ignored and excused in the vast majority of all appeals in this circuit; that is, appeals in which the defective appeal is taken to the proper court. That kind of "reasoning" is known in forums less august than this United States Court of Appeals as an "800–pound gorilla rule." That is to say, even though this court has no authority whatever to excuse compliance with Rule 3(c)(1)(C), it nevertheless has the "power" to do so because more active judges on this court are willing to excuse noncompliance with the rule than are unwilling to do so.

This is not an attractive thing that the court does today. Not only does it make a hash of the venerable principle of judicial self-restraint, it also sends an unmistakable signal to the bench and bar that it is open season in Cincinnati on the rules of practice a majority of judges here might think excessively harsh, unnecessary, widely ignored in practice, or just plain "dumb."

I would enforce the rule and, therefore, respectfully dissent.

CLAY, Circuit Judge, dissenting.

I respectfully dissent from the majority's ruling. The majority, in pursuit of an approach that would permit it to circumvent the requirement that notices of appeal must set forth the jurisdictional prerequisites of Federal Rule of Appellate

Procedure 3(c)(1), has invented a rationale lacking in persuasiveness and unsupported by the prior decisions of this circuit, and more importantly, that is contrary to the express dictates of Supreme Court case law.[1]

In an effort to abrogate the clear and express requirement of Rule 3(c)(1)(C), which explicitly requires that "[t]he notice of appeal must ... name the court to which the appeal is taken," the majority creates out of thin air the proposition that the rule's requirement does not apply, or is waived, if there is only one court available to which the appeal can be taken. The majority thereby essentially concludes that the mandatory jurisdictional requirement of the rule as interpreted by the Supreme Court need not be complied with merely because there exists only a single appellate tribunal to which the appeal can be taken. Simply put, there exists no legal authority for this judicial rewriting of the rule by which the majority blithely repudiates the requirement that the notice of appeal must set out the name of the court to which the appeal is taken—without any discernibly cogent reason, explanation or basis for its decision to do so.

One can search the majority's opinion in vain for any reason or explanation grounded in the language of the rule itself or in the accompanying commentary for the majority's decision to dispense with the rule's express requirement of naming the court of appeals. In rewriting the rule to render it more compatible with the majority's view of what the rule *should* say, the majority engages in a two-step process: (i) it removes the express requirement of the rule that the notice of appeal must name the court to which the appeal is taken; and (ii) it audaciously rewrites the rule to provide that a notice of appeal need not name the court to which the appeal is taken so long as the failure to name the court oc-

curs in a case in which there exists only one tribunal to which the appeal can be taken. (Apparently, it is of no moment to the majority whether the litigant seeking to pursue the appeal is aware of whether there is only a single avenue of appeal or multiple forums to which an appeal can be taken.)

The majority's decision to rewrite the rule to render it more compatible with its notions of equity and the appropriate functioning of the appellate process is in one sense understandable. No one wishes to prevent litigants from perfecting their appeals or from having their appeals heard on the merits. I would prefer that no appeal be dismissed for failure to comply with the jurisdictional prerequisites of the Federal Rules of Appellate Procedure if that were possible; however, it would be wholly inappropriate for me as a judicial officer to attempt to rewrite the rules, as the majority does, to comport with my own sense of how the rules should best be made to function. However much one might agree with and sympathize with the goals sought to be attained by the majority, one must conclude that the majority's actions are wholly inappropriate. If the rules are to be revised or redrafted, that task should be accomplished through the appropriate channels and not as a result of this court undertaking, without appropriate legal authority, the task of itself rewriting the rules.

To the extent that the majority believes that by undertaking the task of rewriting or recasting Rule 3(c) to suit its own objectives that this court is correcting some perceived injustice resulting from the dismissal of cases setting forth defective notices of appeal, the majority is misguided. If the court were willing to enforce the rule as written and to dismiss cases when the notices of appeal fail to include the required jurisdictional elements, I believe

---

1. Rule 3(c)(1) sets forth a total of three requirements for a notice of appeal: the notice must (A) specify the party or parties taking the appeal; (B) designate the judgment, or-

der, or part thereof being appealed; and, of course, (C) name the court to which the appeal is taken. Fed. R.App. P. 3(c)(1).

that litigants and their attorneys would begin to comply with the requirements of the rule within a very short time frame. The consequences of failing to do so would be unpalatable to them. For all of these reasons, I respectfully dissent.

## I.

On November 10, 1998, a panel of this court dismissed Thomas J. Dillon's appeal from the district court's order denying his 28 U.S.C. § 2255 habeas corpus petition. In an unpublished per curiam opinion, the panel dismissed the appeal for lack of jurisdiction upon discovering that the notice of appeal failed to name the court to which the appeal was taken, in violation of Fed. R.App. P. 3(c). The panel in *Dillon* did no more than follow this court's published decision in *United States v. Webb*, 157 F.3d 451 (6th Cir.1998) (per curiam), *cert. denied*, — U.S. —, 119 S.Ct. 2019, 143 L.Ed.2d 1031 (1999), issued little over a month earlier, which held that a notice of appeal that fails to name the court to which the appeal is taken, in violation of Rule 3(c), does not confer jurisdiction on this court. *Id.* at 452–53. The *Webb* court reasoned:

> In light of Rule 3(c)'s clear mandate that a notice of appeal must name the court to which the appeal is taken, coupled with the well-established principle that the requirements of Rule 3(c) are jurisdictional in nature, we conclude that we lack jurisdiction over Webb's appeal. Although timely filed under Rule 4(b), Webb's Notice of Appeal neglects to name the court to which his appeal is taken as required under Rule 3(c). Under these circumstances, Webb's Notice of Appeal failed to confer jurisdiction on this court, notwithstanding any absence of prejudice to the government.

*Id.* at 453. Because Dillon's notice of appeal suffered precisely the same defect as in *Webb*, the *Dillon* panel simply applied *Webb* in dismissing Dillon's appeal for lack of jurisdiction.

Significantly, after *Webb* was issued, the deadline for a petition for a rehearing *en banc* expired without any calls for review. Accordingly, under the Federal Rules of Appellate Procedure, *Webb* was no longer subject to *en banc* review. *See* Fed. R.App. P. 35(c), 40(a). However, by designating *Dillon* for rehearing—a case factually indistinguishable from *Webb* that did nothing more than simply comply with the requirements of *Webb*—this court has managed to subject *Webb* to *en banc* review seemingly in circumvention of its own procedures. I disagree with this approach, which allows for the collateral attack of controlling (and heretofore unquestioned) precedent for an open-ended period of time rather than focusing on the case before the court. This open-ended and ad hoc approach, even if not contrary to this court's rules, is hardly likely to earn this court the respect and confidence of the public we are obligated to serve.

A rehearing *en banc* is permissible only where (i) the panel decision directly conflicts with prior decisions of this court or of the Supreme Court, and, therefore, consideration by the full court is necessary to secure and maintain uniformity of decisions; or (ii) the appeal involves one or more questions of exceptional public importance. 6th Cir. R. 35(c); *see also* Fed. R.App. P. 35(a). The rules thus recognize that *en banc* review is an extraordinary measure to be used sparingly:

> The decision to grant *en banc* consideration is unquestionably among the most serious non-merits determinations an appellate court can make, because it may have the effect of vacating a panel opinion that is the product of a substantial expenditure of time and effort by three judges and numerous counsel. Such a determination should be made only in the most compelling circumstances.

*Bartlett v. Bowen*, 824 F.2d 1240, 1242 (D.C.Cir.1987) (Edwards, J., concurring in denials of rehearing *en banc* where the appeals at issue did not present those "rar-

est of circumstances when a case should be reheard *en banc*").

Notably, in his petition for a rehearing *en banc*, Dillon claimed that the panel's decision was contrary to a prior decision of this court, and that *en banc* review was required to maintain uniformity of decisions. Our subsequent review of the case law exposed his claim as meritless, because *Dillon*, like *Webb*, was not an abrupt departure from Sixth Circuit precedent, but instead represented the continuation of a line of cases dating back to the full court's decision in *Minority Employees v. Tennessee Dep't of Employment Sec.*, 901 F.2d 1327 (6th Cir.1990) (*en banc*), and including such more recent opinions as *Brooks v. Toyotomi Co., Ltd.*, 86 F.3d 582 (6th Cir. 1996) and *Mattingly v. Farmers State Bank*, 153 F.3d 336 (6th Cir.1998). Nor could any claim be made that the *Dillon* or *Webb* opinions contravened any prior decisions of the Supreme Court, thus necessitating *en banc* review.

Nonetheless, even though Dillon had not raised the issue in his petition for rehearing, a majority of this court decided that the appeal raised a question of exceptional public importance. As I expressed to my colleagues at the time, I think it wrong for this court, absent any change in the legal landscape, to reverse course and rethink an opinion delivered such a short time ago. Once we embark on a course of legal precedents, I see no reason to abruptly dispense with an established opinion simply because some judges have belatedly, and quite suddenly, decided that they now disagree with it. *See Bartlett*, 824 F.2d at 1243 (Edwards, J., concurring in denials of rehearing *en banc*) (rejecting the "view that every time a majority of the judges disagree with a panel decision, they should get rid of it by rehearing the case *en banc*"); *Gilliard v. Oswald*, 557 F.2d 359 (2d Cir.1977) (Kaufman, C.J., concurring in denial of petition for rehearing *en banc*) (stating that "a judge should [not] cast a vote for reconsideration by the entire court

merely because he disagrees with the result reached by the panel").

Such an abrupt shift in the court's holding as that proposed by the majority here is inexplicable unless accompanied either by changed circumstances (which in this case have not occurred) that would justify the shift in the court's thinking, or by a mistake or misapprehension of fact or law that requires correction. In the absence of changed circumstances, or misapprehension of fact or law, such conduct is suggestive of unseemly judicial activism on the part of jurists eager to overturn rulings that they, personally, would have decided differently. Significantly, in the instant case, some of the members of the *en banc* court who now vote to overturn *Webb* and its controlling precedent are the very judges who as panel members voted in favor of *Webb* and the cases leading to *Webb* only a short time ago. Again, the confidence of the public in the court system is not likely to be encouraged by such behavior.

Indeed, I believe that the court exhibits confusion and indecisiveness when it overturns a prior decision without permitting time and experience to make manifest any deficiencies in the decision. Rather, change should come through a carefully-considered evolutionary jurisprudential process, where issues and ideas are developed over the entire course of litigation. *See, e.g., United States v. Crawley*, 837 F.2d 291, 293 (7th Cir.1988) (noting that courts are best equipped to rule on issues that have been "refined by the fires of adversary presentation").

## II.

The majority opinion seems concerned only with reaching the end result of overruling *Webb*, without regard for the controlling legal authority. There can be no dispute that Rule 3(c) requires appellants to name in the notice of appeal the court to which the appeal is taken. Fed. R.App. P. 3(c)(1)(C). Nor is there any doubt that this requirement is jurisdictional, so that

noncompliance is fatal to an appeal. "The requirements of Rule 3(c) are jurisdictional in nature, and the court of appeals may not waive or diminish the rule's requirements." *Maerki v. Wilson*, 128 F.3d 1005, 1007 (6th Cir.1997). Today, however, the majority blatantly ignores both this court's and the Supreme Court's prior pronouncements to do precisely that.

### A.

Beginning with the full court's decision in *Minority Employees v. Tennessee Dep't of Employment Sec.*, 901 F.2d 1327 (6th Cir.1990) (en banc), we have consistently held that an appellant's failure to satisfy the requirements of Rule 3(c) is fatal to his appeal because the requirements of Rule 3 are jurisdictional in nature. *See, e.g., Mattingly*, 153 F.3d at 337 (holding that, because the requirements of Rules 3 and 4 are jurisdictional in nature, the appellant's failure to sign the notice of appeal pursuant to Rule 4(a)(1) was fatal to the appeal); *Maerki*, 128 F.3d at 1007–08 (holding that the notice's failure to specify one of the parties taking the appeal deprived the court of jurisdiction to hear the unnamed party's appeal); *Minority Employees*, 901 F.2d at 1331–33 (holding that the notice's failure to name each and every party taking the appeal divested the court of its jurisdiction to hear the claims of the unnamed appellants because the defect was jurisdictional in nature). Thus, *Webb* did no more than reiterate this court's long-held understanding that the requirements of Rule 3(c) are jurisdictional in nature, and, therefore, failure to meet these requirements requires dismissal of the appeal.

This understanding itself is rooted in the express language of two Supreme Court decisions: *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and *Smith v. Barry*, 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992). In *Torres*, the notice of appeal listed fifteen plaintiffs as appellants, but omitted a sixteenth plaintiff because of a clerical error. Even though the appellees set forth no proof of actual prejudice, the Court held that the defect was fatal because it divested the appellate court of jurisdiction to hear the appeal: "But although a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." *Torres*, 487 U.S. at 317, 108 S.Ct. 2405. Because the requirements of Rule 3(c) are jurisdictional in nature, the omission of the name of the sixteenth appellant was fatal to his appeal. *Id.* at 315–18, 108 S.Ct. 2405. The Court concluded: "We recognize that construing Rule 3(c) as a jurisdictional prerequisite leads to a harsh result in this case, but we are convinced that the harshness of our construction is 'imposed by the legislature and not by the judicial process.'" *Id.* at 318, 108 S.Ct. 2405 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)).

Four years later in *Smith*, the Court held that an appellate brief filed in a court of appeals could serve as a notice of appeal if it contained all three elements required under Rule 3(c). *Smith*, 502 U.S. at 248–49, 112 S.Ct. 678. Although the Court in that case found that Rule 3 had been complied with, the Court again emphasized that "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Id.* at 248, 112 S.Ct. 678 (citing *Torres*, 487 U.S. at 316–17, 108 S.Ct. 2405).

### B.

To be sure, the majority purports to disclaim an "intention to in any way 'waive' the jurisdictional requirement that a notice of appeal designate the court to which the appeal is taken." But then the majority does just that. The majority now proclaims that "where only one avenue of appeal exists, Rule 3(c)(1)(C) is satisfied even if the notice of appeal does not name

the appellate court." The reader will find no such exception in the text of Rule 3(c), which, in the plainest language imaginable, requires simply that the notice of appeal name the court to which the appeal is taken—regardless of the number of available appellate forums.

The naming requirement set forth in Rule 3(c) remains constant no matter the number of possible avenues for appeal. It is far from unusual for an appellant, like Dillon, to have a single avenue for appeal; rather, it is the rare appellant who has multiple avenues open to him. Indeed, when Rule 3 was originally adopted in 1967, appellants had even fewer avenues of appeal open to them than they do now, yet the drafters still included the requirement that the notice of appeal name the court to which the appeal is taken.

The court's ruling today renders this provision a nullity in the vast majority of appeals that come before us. In so doing the court violates one of the most fundamental canons of statutory construction: "A statute should be construed to accord meaning and effect to each of its provisions." *Federal Express Corp. v. United States Postal Serv.*, 151 F.3d 536, 542 (6th Cir.1998). *See also Business Guides v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 540–41, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (applying standard rules of statutory construction in interpreting the Federal Rules of Civil Procedure). Apparently a majority of the members of this court have come to disagree with the naming requirement codified at Rule 3(c)(1)(C) as it is applied in the vast majority of cases that come before us. But this disagreement on the part of the members of this court does nothing to lessen our obligation to enforce the rule as it is currently written.

### C.

Nor does anything in the Federal Rules of Appellate Procedure or the governing Supreme Court case law permit this court to excuse an appellant from fulfilling the dictates of Rule 3(c). Instead, the Court has held only that Rule 3's requirements are to be liberally construed. *Smith*, 502 U.S. at 248, 112 S.Ct. 678; *Torres*, 487 U.S. at 316, 108 S.Ct. 2405. This means that "if a litigant files papers in a fashion that is technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Torres*, 487 U.S. at 316–17, 108 S.Ct. 2405. The Court has explained that this approach is appropriate given the provision, now located at Rule 3(c)(4), that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal." *See Smith*, 502 U.S. at 249, 112 S.Ct. 678.

The Court first applied this doctrine to rescue an appeal from dismissal in *Smith*. There the Court held that a *pro se* prisoner's "informal brief" filed with the appellate court within the time allowed for filing a notice of appeal could constitute the functional equivalent of the notice of appeal if it contained all three elements required under Rule 3(c). The Court held that the Federal Rules of Appellate Procedure "do not preclude an appellate court from treating a filing styled as a brief as a notice of appeal ... if the filing is timely under Rule 4 and conveys the information required by Rule 3(c)." *Id.* In so holding, the Supreme Court simply followed the lead of numerous circuit courts—including this one—that had permitted a document labeled other than a notice of appeal to serve as a notice of appeal if it otherwise met all three of the substantive Rule 3(c) requirements. *See, e.g., United States v. Christoph*, 904 F.2d 1036 (6th Cir.1990) (holding that the appellant's motion for enlargement of time could serve as the notice of appeal where it met all of the Rule 3(c) requirements); *McMillan v. Barksdale*, 823 F.2d 981 (6th Cir.1987) (holding that the appellant's *pro se* request for a certificate of probable cause could function as the notice of appeal where it

met the requirements of Rule 3(c) and was filed within the time prescribed by Rule 4).

Not surprisingly, the majority does not rely on the "functional equivalent" doctrine to justify its holding today. This doctrine applies only where, as in *Smith*, the appellant's papers substantively comply with Rule 3(c) but are somehow deficient in style or form; for example, the document is not expressly labeled as a notice of appeal even though it contains all of the information required by Rule 3(c) and is timely filed. *See United States v. Means*, 133 F.3d 444, 450 (6th Cir.1998) (holding that two filings by the appellant could not serve as the functional equivalent of a notice of appeal where the first document did not contain all of the information required by Rule 3(c) and the second was not timely filed pursuant to Rule 4(a)).

Here, Dillon nowhere named this court in his notice of appeal. Accordingly, the defect is not one of style, but of substance: an essential element is completely missing from the notice of appeal. Such a complete failure to fulfill a Rule 3(c) requirement cannot be considered the functional equivalent of complying with the rule. For example, in *Smith*, the Supreme Court ultimately remanded the case to the court of appeals to determine if the appellant's "informal brief" actually contained all of the information required by Rule 3(c) so that it could serve as the functional equivalent of a notice of appeal. *Smith*, 502 U.S. at 250, 112 S.Ct. 678. *See also Mattingly v. Farmers State Bank*, 153 F.3d 336, 337 (6th Cir.1998) (stating that "[t]he complete failure to sign a notice of appeal cannot be viewed as the functional equivalent of doing so").

### D.

For similar reasons, I find unpersuasive the majority's reliance on that portion of Rule 3(c)(4), added in 1979, that excuses informalities of form or title in a notice of appeal. "Informality of form" suggests that the required substantive information is included, however inartfully or clumsily communicated. Here, on the other hand, the name of the court to which the appeal is being taken is not presented informally or in the improper manner; instead, it is omitted entirely.

Nor do I agree that the 1993 amendment to Rule 3(c) requires a different conclusion. Because its conduct today runs afoul of well-settled Supreme Court case law establishing the jurisdictional and unalterable nature of Rule 3(c)'s requirements, the majority can do no more than quote out of context the Advisory Committee Notes accompanying an amendment of no relevance here. Had their position been properly grounded in the text of Supreme Court decisions, the majority would doubtless refrain from relying upon such a lesser authority.

In any event, this authority is of no moment to the instant case. The 1993 amendment simply provided that, in specific response to *Torres*, an "appeal must not be dismissed ... for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R.App. P. 3(c)(4). This provision has the effect of modifying the requirement contained in Rule 3(c)(1)(A) so that the appellant's failure to name a party in the notice of the appeal is not always fatal to the appeal. *See, e.g., Anderson v. AT & T Corp.*, 147 F.3d 467, 472–73 (6th Cir.1998) (holding that notice of appeal's use of *et al.* to designate additional parties was not cause for dismissal in light of the 1993 amendment to Rule 3(c)).

If anything, the 1993 amendment demonstrates that any substantive change to Rule 3(c)'s requirements should not be effected through court decisions, but only through the official rule-making process. Congress has vested the Supreme Court with the power to promulgate the general rules that govern practice and procedure in the federal courts, including the courts of appeals, provided that those rules do not alter any substantive right. *See* 28 U.S.C. § 2072. In turn, the Advisory

Committee, which is subject to public and congressional scrutiny, has the authority to recommend proposed rules and modifications to the Supreme Court for approval. *See* 28 U.S.C. § 2073. If the Court approves of a proposed rule, it then submits a copy of the rule to Congress; if Congress takes no action in opposition, the rule may then go into effect. *See* 28 U.S.C. § 2074.

Thus, the 1993 amendment that relaxed the requirement of Rule 3(c)(1)(A) went into effect only after completion of the specific process provided for by statute. Similarly, if the members of the majority believe that Rule 3(c)(1)(C) should be amended, they are free to attempt to effect change through the prescribed statutory process. Instead, this court has chosen to effectively eliminate the naming requirement contained in Rule 3(c)(1)(C) without following any of the procedures mandated by statute.

### III.

Today's decision excuses the vast majority of appellants in the Sixth Circuit from one of the essential requirements of Rule 3(c), without regard for the plain language of the rule or the governing Supreme Court case law. It is well-settled that "litigants are charged with the responsibility for complying with the Federal Rules of Appellate Procedure," *Maerki*, 128 F.3d at 1008, and this court is not vested with the authority to excuse noncompliance, regardless of individual judges' notions of equity or prejudice, *Torres*, 487 U.S. at 317, 108 S.Ct. 2405. "Rather plainly, certain rules are deemed sufficiently critical in avoiding inconsistency, vagueness and an unnecessary multiplication of litigation to warrant strict obedience even though application of the rules may have harsh results in certain circumstances. Under *Torres*, Rule 3(c) is such a rule." *Minority Employees*, 901 F.2d at 1329.

The majority today disregards these principles in its drive to rewrite the text of Rule 3(c). Because I believe that today's ruling constitutes an abuse of the judicial process to reach a result that can only be achieved by following the procedures mandated by statute, I respectfully dissent.

GILMAN, Circuit Judge, dissenting.

I concur in Judge Clay's dissent, except for Part I of his opinion. As much as I sympathize with the result reached by the majority, I do not find any justifiable way to ignore the clear requirements of Rule 3(c)(1) of the Federal Rules of Appellate Procedure as interpreted by the United States Supreme Court.

In my opinion, the consequence of failing to name the court to which the appeal is taken is unduly harsh in a case such as the one before us. But we are not at liberty to act as free-wheeling chancellors of old, riding roughshod over rules that in our opinion are inequitable. The rule of law requires that such a change come from either Congress or the Supreme Court, which I in fact would urge be done. In the meantime, I agree with the wisdom of President Ulysses S. Grant's statement that "the best way to get rid of a bad law is to enforce it." *See State ex rel. Skilton v. Miller*, 164 Ohio St. 163, 128 N.E.2d 47, 52 (1955) (Stewart, J., dissenting).