NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0056n.06

Case No. 15-5526

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 23, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BRYAN LAMB, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| ) | |
| HOWE, et al., ) | |
| ) | |
| Defendants-Appellees; ) | |
| ) | |

BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Bryan Lamb initially filed this 42 U.S.C. § 1983 action *pro se*. The district court dismissed the case for failure to state a claim. Thereafter, during the timeframe to appeal, Lamb wrote the district court a letter indicating his intention to appeal, but noting that, because the prison was on lockdown due to a riot, he was unable to do so.

Lamb did not file a formal notice of appeal until after the time to do so lapsed. This court issued a show-cause order, requiring Lamb to explain why his appeal should not be dismissed for failure to file a timely notice of appeal. After responding to the show-cause order, Lamb was appointed counsel to aid in the resolution of three issues. First, should Lamb's letter be construed as a notice of appeal? Second, if not, should it be construed as a motion for extension of time to file an appeal and remanded to the district court so that it could determine whether to grant that extension? And finally, if it is proper to reach the merits of Lamb's claim at this

juncture, did the district court err in dismissing the case for failure to state claim? For the reasons stated below, we construe Lamb's letter as a timely notice of appeal but affirm the district court's dismissal because Lamb's complaint does not state a claim for which relief can be granted.

I.

Bryan Lamb was incarcerated at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. He alleges that on the evening of January 21, 2015, inmates in a neighboring cell intentionally clogged their toilet and thereby flooded their cell with water. A corrections officer shut off the water to the flooding toilet, but by then "several inches of water had flowed into [Lamb's] cell." (DE 1, Compl., Page ID 5.) Lamb alleges that he asked Corrections Officer Howe for a mop to clean up the water in his cell, but was told to use his blanket instead. While the officers did mop up the water outside of Lamb's cell, he alleges that they did not clean up inside his cell and failed to provide him with any means to do so. Around 11 p.m., Lamb claims that, as he was trying to avoid stepping in the toilet water while putting on his shoes, he slipped and hit his head. This was approximately four hours after his fellow inmates began flooding their cell.

Lamb was taken by ambulance to a hospital in Waynesboro, Tennessee. He received six stitches, and claims that, since his accident, he has had recurrent seizures. A few days after his fall, Lamb filed a grievance with SCCF. He was ultimately transferred to the West Tennessee State Penitentiary.

Lamb filed this 42 U.S.C. § 1983 action on March 9, 2015, alleging that the officers at SCCF violated his Eighth and Fourteenth Amendment rights by being deliberately indifferent to his right to be free from cruel and unusual punishment. Because Lamb was a prisoner

proceeding *pro se*, the district court conducted its initial review under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e. The PLRA requires the district court to dismiss a prisoner's complaint if it fails to state a claim for which relief can be granted. Pursuant to this review, the district court dismissed Lamb's complaint, finding that, even liberally construed, his allegations failed to state a claim. It found that slippery prison floors could not amount to cruel or unusual punishment.

The district court's order dismissing Lamb's complaint was entered on March 23, 2015. On April 2, 2015, Lamb wrote the district a letter that stated:

> My name is Bryan Alan Lamb. I filed a PRO SE on March 9, 2015. My case # is 1:15-CV-00018. The reason for my Inquiry is I am in need of the Courts assistance. I need to appeal my judgment. But, I do not have the proper paperwork to appeal a 1983 Prisoner Civil Rights case. Nor do I have access to try to attempt to get any paperwork. At the present time, WTSP is on lockdown. No inmate movement. Can you please send me the proper documents that I will need to appeal. All help is greatly appreciated. Thank you.

(DE 9, April 2 Letter, Page ID 23.) The district court filed this letter in the record on April 10, 2015. Lamb filed a formal notice of appeal on May 14, 2015—a date well past the April 22 deadline.

This court issued a show-cause order, directing Lamb to explain why his appeal should not be dismissed for failure to timely file his notice of appeal. Lamb responded to that order by informing the court that he did not understand that he had to file for an extension of time, and that the prison lockdown—which lasted twenty-nine days—prevented him from accessing the law library. On November 4, 2015, this court entered an order referring the case to this panel and appointing an attorney for Lamb so that the jurisdictional questions raised by the case could be more fully considered.

II.

Compliance with notice-of-appeal requirements found in Federal Rule of Appellate Procedure 3 "is both a mandatory and a jurisdictional prerequisite." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) (quoting *United States v. Means*, 133 F.3d 444, 448 (6th Cir. 1998)); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988) (noting that, "although a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met"). We are "under an independent obligation to police our own jurisdiction," and thus have asked Lamb to brief this jurisdictional issue. *Bonner v. Perry*, 564 F.3d 424, 426–27 (6th Cir. 2009) (internal citations and quotations omitted).

If we reach the merits of Lamb's claim, the district court's dismissal of a *pro se* prisoner's complaint under 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e is also reviewed *de novo. Grinter v. Knight*, 532 F.3d 567, 571–72 (6th Cir. 2008) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). The PLRA uses the same motion-to-dismiss standard as Rule 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, all of Lamb's non-conclusory allegations are accepted as true, *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), and we review the complaint to determine whether it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.

A.

If a litigant wishes to appeal an order or judgment, a notice of appeal must be filed with the district court within thirty days after entry of the judgment or order the appellant wishes to appeal. Fed. R. App. P. 4(a)(1)(A). Here, Lamb's formal notice of appeal was filed too late.[1] However, the letter that he wrote to the district court will suffice, provided that it is the "functional equivalent" of a notice of appeal. *Smith v. Barry*, 502 U.S. 244, 248 (1992).

The required contents of a notice of appeal are governed by Rule 3, and essentially require that the appellant provide the "who, what, and where" of her desired appeal. *See* Fed R. App. P. 3(c); *see also Becker v. Montgomery*, 532 U.S. 757, 767 (2001) (noting that "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court"). Rule 3(c) requires the notice of appeal to (1) specify the party taking the appeal, (2) designate the judgment or order being appealed, and (3) name the court to which the appeal is taken. Fed. R. App. P. 3(c)(1)(A)–(C). Rule 3(c)(4) instructs that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). Further, the arguments and filings of *pro se* litigants should be liberally construed. *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

Documents other than formal notices of appeal can satisfy Rule 3(c)'s requirements. *See Smith*, 502 U.S. at 248. While "Rule 3's dictates are jurisdictional in nature," and

---

[1] Federal Rule of Appellate Procedure 4(a)(1)(A) gives civil litigants thirty days from entry of judgment to file their notice of appeal. Here, the district court's judgment was entered on March 23, 2015, which gave Lamb until April 22, 2015 to file his notice of appeal. Lamb did not file his formal notice of appeal until May 14, 2015.

noncompliance is thus fatal to an appeal, the Supreme Court has held that even "when papers are 'technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.'" *Id.* (quoting *Torres*, 487 U.S. at 315).

Lamb's letter, liberally construed, satisfies Rule 3's three content requirements. First, it identifies the party taking the appeal. Fed. R. App. P. 3(c)(1)(A). Lamb's letter identified himself as the person seeking the appeal. Further, *pro se* notices of appeal are considered filed on behalf of the signer, Fed. R. App. P. 3(c)(2), and Lamb signed his letter. Second, Lamb's letter sufficiently designated the judgment or order being appealed. Fed. R. App. P. 3(c)(1)(B). While he did not specifically designate the order or judgment being appealed, he did provide his case number. We will probe the notice of appeal and the district court's docket to determine what order or judgment a *pro se* litigant intended to appeal. *See Ramsey v. Penn. Mut. Life Ins. Co.*, 787 F.3d 813, 819 (6th Cir. 2015). As there was only one judgment in his case, it easily can be inferred what Lamb sought to appeal. Rule 3's final requirement is that the notice of appeal name the court to which the appeal is taken. Fed. R. App. P. 3(c)(1)(C). Lamb did not indicate that he was appealing his case to the Sixth Circuit. However, where there is but one court to which an appellant can avail himself of appellate review, we cannot dismiss the case for failure to name that court specifically. *Dillon v. United States*, 184 F.3d 556, 557 (6th Cir. 1999) (*en banc*). Where, as here, the document acting as a notice of appeal includes the case number and the appellant's name, and is sent to the district court from whose judgment the appeal is taken, we can readily determine to which court the appellant seeks to appeal. *Id.* Thus, Lamb's letter satisfies Rule 3's content requirements and should be construed as a notice of appeal. This result not only conforms to the requirement that *pro se* litigants' filings and pleadings be

liberally construed, but also complies with Rule 3(c)(4)'s dictate that appeals not be dismissed for informality in the form or title of the notice of appeal. As his letter was sent within Rule 4's thirty-day window, we have jurisdiction to hear Lamb's appeal.

B.

The district court dismissed Lamb's complaint for failure to state a claim. It properly construed Lamb's claim as one brought under the Eighth and Fourteenth Amendments for failure to protect his safety as a prisoner. When alleging that his safety was endangered due to the conditions of confinement, a plaintiff can successfully bring a § 1983 claim only by showing that the prison officials acted with "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994). Deliberate indifference is a higher standard than negligence, and it contains objective and subjective components. *Id*. at 834; *see also Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (noting that deliberate-indifference claims require proof of objective and subjective components). The risk of harm to the prisoner caused by the conditions of confinement must have been, objectively, sufficiently serious to require constitutional protection. *Farmer*, 511 U.S. at 834; *see also Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 352 (6th Cir. 2001) ("To succeed on a conditions of confinement claim, a plaintiff must show . . . the deprivation alleged is, objectively, 'sufficiently serious.'"). As for the subjective component, it requires Lamb to "show that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Richko*, 819 F.3d at 915–16 (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)).

Accepting all facts in Lamb's complaint as true, and construing all inferences in his favor, he has not demonstrated that the risk he faced was sufficiently serious. Lamb's allegation

is, in its essence, a slip-and-fall claim. Mere negligence is not sufficient to violate the Eighth Amendment, *Farmer*, 511 U.S. at 835, and the federal courts have nearly unanimously held that a "slip and fall, without more, does not amount to cruel and unusual punishment." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (internal quotations and citations omitted); *see also Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing for failure to state a claim a prisoner's complaint alleging unconstitutional conditions of confinement where the prisoner was deprived of a working toilet and was subjected to a flooded cell); *White v. Tyszkiewicz*, 27 F. App'x 314, 315 (6th Cir. 2001) (dismissing a prisoner's complaint alleging deliberate indifference where prisoner slipped and fell on ice); *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004) (finding no § 1983 violation where prisoner claimed that officials were aware of slippery conditions created by other prisoners but took no action to remedy the problem, and where the prisoner slipped and fell due to those conditions); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that slippery prison floors "do not state even an arguable claim for cruel and unusual punishment" (quoting *Jackson v. Arizona*, 885 F.2d 639, 644 (9th Cir. 1989)).

Lamb alleges that federal courts have found that slippery floors may be sufficiently dangerous to create a potential constitutional violation "where a slippery prison floor is combined with one or more exacerbating factors." (Appellant Br. at 30–31.) Lamb lists four exacerbating factors that he asserts support his deliberate-indifference claim. First, he alleges that the slippery condition here is different than in many of the other slip-and-fall cases because it occurred in an area that is not normally wet. Second, he claims that the slippery condition was exacerbated by darkness. Third, Lamb claims that his repeated warnings to the guards indicate the risk was serious. And lastly, he argues that the water covering his floor was unsanitary toilet

water rather than potable water and that this fact is sufficiently exacerbating to warrant reversing the district court's dismissal.

It is true that courts have occasionally found that a slip-and-fall case that has additional exacerbating factors can create a plausible allegation of constitutional harm. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (holding that where the plaintiff was disabled, had to use crutches, and had fallen many times due to slippery conditions in the shower, and prison officials were aware of all of these facts, the plaintiff could potentially state a deliberate-indifference claim). But Lamb's case lacks sufficient exacerbating factors to survive even motion-to-dismiss review. Despite his attempt to differentiate this case because the slippery condition occurred in his cell rather than a normally wet area, such as a shower, this circuit has found that a temporarily flooded cell is insufficient to state a claim under the Eighth Amendment. *See Dellis*, 257 F.3d at 511. Further, even assuming it was dark the entire time from when the flooding began at 7 p.m. until when Lamb fell at 11 p.m., this fact does not create unconstitutional conditions of confinement. Lamb was aware of the flooding in his cell, and he does not allege that the guards failed to notify him of the condition. Accordingly, it is hard to see how the darkness could have contributed further to the risk that he faced. And Lamb's claim that his repeated warnings indicate that the risk was serious would turn the objective substantial-risk test into a subjective test based only on a prisoner's repeated complaints. This is not sufficient.

Lamb's strongest argument is that the water causing his fall was unsanitary. However, at most, he was exposed to the unsanitary conditions for four hours. Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor

deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000)). The Supreme Court has held that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Here, Lamb does not specifically allege that he was exposed to human waste, but seems to imply that, because the flooding water came from the toilet, it was, by necessity, unsanitary. Assuming this is true, and acknowledging that exposure to human waste is a condition that courts will more quickly find sufficiently serious, the four-hour period of exposure here does not warrant relief. At most, Lamb has alleged a temporary inconvenience that, while serious, did not last so long as to create conditions that fall below "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis*, 257 F.3d at 511; *see also Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (finding that a prisoner who alleged that he was placed in a cell covered in fecal matter and forced to remain there for three days sufficiently stated a claim under the Eighth Amendment); *see also DeSpain*, 264 F.3d at 974 (finding that a thirty-six hour period of exposure to non-working toilets and other inmates' urine and feces via standing water was sufficiently serious); *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (finding a "sufficiently serious condition of confinement" where an inmate was in a feces-covered cell for three days); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (three days in a cell with feces smeared on walls not within "civilized standards, humanity, and decency").

Additionally, according to Lamb's own complaint, during the four hours that his cell was flooded, prison officials (1) removed the toilet-flooding prisoners from their cell, (2) shut off the

10

water to the flooding toilet, and (3) mopped up and dried the hallway and the area in front of Lamb's cell. Thus, from the face of Lamb's complaint it appears that the prison officials, far from being deliberately indifferent, were taking proactive steps to remedy the situation. Given the short amount of time that lapsed between the flooding of Lamb's cell and his fall, and that the prison officials were taking reasonable steps to cure the problem, he cannot state a claim under § 1983 for cruel and unusual punishment.

## IV.

For the reasons stated above, we affirm the district court's dismissal of this case.