**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 04-4283

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK COHN,

Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Andre M. Davis, District Judge.  (CR-01-
374-AMD)

———————————

Argued:  October 28, 2005                Decided:  January 18, 2006

———————————

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

———————————

Dismissed in part; affirmed in part by unpublished per curiam
opinion.

———————————

**ARGUED:** Paul Mark Sandler, SHAPIRO, SHER, GUINOT & SANDLER,
Baltimore, Maryland, for Appellant.  Joyce Kallam McDonald,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Robert B.
Levin, Trey Mayfield, SHAPIRO, SHER, GUINOT & SANDLER, Baltimore,
Maryland, for Appellant.  Allen F. Loucks, United States Attorney,
Robert R. Harding, Assistant United States Attorney, Baltimore,
Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Defendant-Appellant, Mark Cohn, appeals from the district court's judgment of conviction and sentence for multiple counts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively, and one count of conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 371. Cohn argues that the district court committed multiple errors during the trial and erred in denying each of his four motions for a new trial. The Government argues, via a motion to dismiss the appeal, that this Court lacks jurisdiction because Cohn's notice of appeal was untimely. For the reasons that follow, we grant the Government's motion to dismiss Cohn's appeal of the district court's judgment of conviction and sentence and denials of the first three motions for a new trial. In addition, we affirm the district court's denial of Cohn's fourth motion for a new trial.[1]

I.

The evidence adduced at trial established that Cohn, as general counsel and executive vice president of Four Star Financial Services, LLC ("Four Star"), led a fraudulent telemarketing scheme that involved selling consumers memberships in a program through

---

[1]As conceded by the Government at oral argument, Cohn's notice of appeal *was* timely to note an appeal of the district court's denial of Cohn's fourth motion for a new trial, as it was filed the same day that the motion was denied. Cohn's appeal of that order is discussed in Section III.

which they were supposed to receive such items as pre-approved credit cards and valuable coupons and discounts. Although consumers, who paid for the membership by having the fees debited from their bank accounts, received "fulfillment" packages through the mail, the contents of those packages typically consisted of items of little or no value, such as credit card applications and coupon booklets. Dissatisfied consumers discovered that obtaining a refund of their membership fees was extremely difficult, if not impossible.

At trial, the Government presented as witnesses several of Cohn's subordinates at Four Star, as well as individuals from other companies who dealt with Cohn. Cohn elected not to call any witnesses, choosing, instead, to develop his defense through extensive cross-examination. That defense primarily argued that the Government failed to prove that he had participated in the scheme knowingly and willfully with the specific intent to deceive. On June 19, 2003, at the conclusion of the trial, the jury returned verdicts of guilty on all counts of the indictment.

Following the trial and the filing of the district court's sentencing order and memorandum opinion, Cohn, with the assistance of counsel throughout, filed the series of motions at issue in this appeal. On January 15, 2004, Cohn filed the first of four motions for a new trial, each based on the discovery of new evidence, under Federal Rule of Criminal Procedure 33. The district court denied

that motion on January 30, 2004.  On February 6, 2004, Cohn filed an Ex Parte Application for 30 Day Extension of Time [within which to] File Notice of Appeal ("Motion for Extension of Time"), which the district court denied on February 9, 2004.  On February 17, 2004, Cohn filed his second motion for a new trial, which the district court denied on February 18, 2004.  On that same date, the judgment of conviction was entered.  On March 1, 2004, Cohn filed his third motion for a new trial, which the district court denied on March 10, 2004.  On March 24, 2004, Cohn filed his fourth, and final, motion for a new trial, which the district court denied on April 21, 2004.

On April 21, 2004, the date Cohn's fourth motion for a new trial was denied, he filed a notice of appeal from his judgment of conviction and the denials of all four new trial motions.[2]  On May 17, 2004, the Government filed a motion to dismiss the appeal on the ground that the notice of appeal was untimely.

II.

As a threshold matter, we must determine which, if any, of the district court's decisions we may review.  "Because questions of subject matter jurisdiction concern the court's very power to hear the case, we must first determine whether we have jurisdiction to

---

[2]On April 28, 2004, Cohn filed an amended notice of appeal to correct a minor clerical error in the first notice.

hear [an] appeal before proceeding to the merits of that appeal." United States v. Bunn (In re 1997 Grand Jury), 215 F.3d 430, 433 (4th Cir. 2000) (internal quotation marks omitted) (citation omitted).  Making this determination, in turn, requires that we ascertain whether Cohn timely filed a notice of appeal.

Cohn advances two alternative arguments in support of his assertion that his notice of appeal was timely.  First, he argues that the filing of his fourth motion for a new trial extended the deadline to file a notice of appeal to ten days after the district court's denial of that motion.  Because he filed a notice of appeal on the same day that the district court denied his fourth motion for a new trial, he argues that the notice was timely.

Alternatively, Cohn argues that his Motion for Extension of Time was the functional equivalent of a notice of appeal. According to Cohn, because that ex parte motion was filed within the time limit for filing such a notice, his notice was timely.  We consider each contention in turn.

A.

The defendant in a criminal case must file a notice of appeal within ten days after entry of final judgment unless the district court extends the time or the defendant makes certain post trial motions.  See Fed. R. App. P. 4(b).  If the defendant timely moves for a new trial under Federal Rule of Criminal Procedure 33, then

the notice of appeal "must be filed within 10 days after the entry of the order disposing of the last such remaining motion, or within 10 days after the entry of judgment of conviction, whichever period ends later." Fed. R. App. P. 4(b)(3)(A). However, if the motion for a new trial is based on newly discovered evidence (as all of Cohn's motions were), it must also meet the additional requirement of being made "no later than 10 days after the entry of the judgment." Fed. R. App. P. 4(b)(3)(A)(ii). The time periods for filing a notice of appeal are "mandatory and jurisdictional." Browder v. Dir., Dep't of Corr., 434 U.S. 257, 264 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229 (1960)).

Here, the district court entered the judgment of conviction on February 18, 2004. Cohn then had ten days within which to notice an appeal unless he made one of the motions identified in the rule. Cohn made such a motion. His third motion for a new trial, made on March 1, 2004, was within ten days of the judgment, and thus extended the time to file a notice of appeal to ten days after entry of the order disposing of that third motion.[3] The district court denied the motion on March 10, 2004, yielding a deadline to file a notice of appeal of March 24, 2004. See Fed. R. Crim. P. 45. Instead of filing a notice of appeal, however, Cohn elected to

---

[3]Cohn's first and second new trial motions did not extend the time within which to file the notice of appeal because both were disposed of by orders dated on or before the date of the final judgment.

7

file a fourth motion for a new trial based on newly discovered evidence on March 24, 2004.  He contends that this motion again extended the time to file a notice of appeal for the judgment and all of the district court's post-trial orders to ten days after entry of the order disposing of the motion.

Despite the plain language of Federal Rule of Appellate Procedure 4(b)(3)(A)(ii) that a motion for a new trial based on newly discovered evidence triggers the application of the provision extending the time to file a notice of appeal "only if the motion is made no later than 10 days after the entry of the judgment" (emphasis added), Cohn argues that the rule has been effectively amended by United States v. Ibarra, 502 U.S. 1 (1991) (per curiam).  According to Cohn, Ibarra stands for the proposition that a final judgment ceases to be final once a new trial motion is timely filed and only becomes final again once the district court disposes of the motion.  At that time, Cohn maintains, the ten-day period to file a notice of appeal of that judgment starts anew.  Under this interpretation of Ibarra, Cohn argues that the district court's final judgment of conviction and sentence and its orders denying his first three motions for a new trial ceased to be final when, before the deadline passed for filing the notice of appeal, he filed his fourth motion for a new trial.  Then, when the district court made the judgments final again by disposing of the fourth new trial motion on April 21, 2004, the ten day time to file a notice

8

of appeal began anew for the judgment of conviction and sentence as well as for the denials of all four motions for a new trial.  We disagree.

The issue in <u>Ibarra</u> was whether the thirty-day period provided in Rule 4(b)(1)(B) for the Government to note an appeal begins to run on the date of the district court's order or on the date of an order denying the Government's motion for reconsideration--a question not expressly addressed in the rules.  The Supreme Court answered this question by saying that, under the well-established rule in civil cases and the Court's consistent practice of treating petitions for rehearing as having the same effect in criminal cases, the 30-day period begins with the denial of the petition for rehearing.  <u>Id.</u> at 6, citing decisions in <u>United States v. Healy</u>, 376 U.S. 75 (1964), and <u>United States v. Dieter</u>, 429 U.S. 6 (1976) (per curiam).

Thus, <u>Ibarra</u> dealt with the effect of a petition for rehearing on the time for the Government to file a notice of appeal, an issue on which Rule 4(b) is silent.[4]  The rule is not similarly silent with respect to the effect of a motion for a new trial based on newly discovered evidence on the time for a defendant to file a notice of appeal.  As noted above, Rule 4(b)(3)(A)(ii) expressly

---

[4]Even if the holding in <u>Ibarra</u> could be read broadly to apply to all post-trial motions, the Supreme Court explicitly declined to reach the issue of extension of time in a case, such as the present one, where successive motions were submitted.  <u>Ibarra</u>, 502 U.S. at 7 n.3.

requires that, where the motion is based on newly discovered evidence, the motion be made no later than ten days after the entry of judgment. Interpreting the rule as having been amended by Ibarra in the manner Cohn seeks would effectively eliminate that express time limit. Under such an interpretation, a defendant could unilaterally extend the time for filing a notice of appeal by filing serial motions for a new trial for up to three years.[5]

Adopting Cohn's interpretation of Ibarra would also create an internal inconsistency in the rules governing the effect of a motion on notices of appeal. The other motions that can extend the time to file a notice of appeal under Rule 4(b)(3)(A)--motions for judgment of acquittal, a new trial grounded on any reason other than newly discovered evidence and arrest of judgment--are not subject to the same ten-day time limitation as motions for a new trial grounded on newly discovered evidence. That distinction exists because those motions, pursuant to the Federal Rules of Criminal Procedure, must be filed within seven days after the verdict or finding of guilty. See Fed. R. Crim. P. Rules 29(c)(1); 33(b)(2); 34(b). A motion for a new trial grounded on newly discovered evidence, on the other hand, may be filed up to three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1). Thus, the unique time frame applied to motions for a new

_____

[5]Any motion for a new trial grounded on newly discovered evidence must be filed within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1).

10

trial grounded on newly discovered evidence in the Federal Rules of Appellate Procedure creates a comparable limitation on the ability to delay indefinitely the time to file a notice of appeal as the Federal Rules of Criminal Procedure create for the other motions. Eliminating that distinction, as Cohn argues, would create an artificial incentive for defendants to file motions for a new trial based on newly discovered evidence, regardless of their merit, to obtain additional time within which to file a notice of appeal. Because Ibarra is inapplicable to the facts before us, we conclude that Cohn's April 21, 2004 notice of appeal was not timely to note an appeal of the district court's judgment of conviction and sentence and its orders denying his first three motions for a new trial.

B.

Alternatively, Cohn argues that his February 6, 2004 Motion for Extension of Time constitutes the functional equivalent of a notice of appeal under the principles of Smith v. Barry, 502 U.S. 244 (1992).[6]  He cites Barry for the proposition that

_____

[6]At oral argument, Cohn's counsel stated that his motion for a bail hearing also served as the functional equivalent of a notice of appeal.  The Joint Appendix does not contain the motion for a bail hearing.  More importantly, Cohn failed to make this argument either in his motion in opposition to the Government's motion to dismiss the appeal or in his briefs before this Court.  Therefore, he waived the argument.  Schlossberg v. Barney, 380 F.3d 174, 182 n.6 (4th Cir. 2004).

[w]hile a notice of appeal must specifically indicate the litigant's intent to seek appellate review . . . the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts. . . . Thus, the notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal. If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal.

Id. at 248-49 (citations omitted). He also notes that other circuits have construed motions for an extension of time as a notice of appeal.[7] In light of this trend, we do not foreclose the possibility that a motion for an extension of time to file a notice of appeal may constitute the functional equivalent of a notice of appeal. We conclude, however, that a finding of functional equivalence is not appropriate on these facts.

We base that conclusion on the totality of the circumstances presented in this appeal. First, as we have noted, Cohn was represented by counsel throughout the proceedings in question. That representation has been both vigorous and knowledgeable regarding the post-trial process.[8] Cohn relies heavily, albeit not

---

[7]See e.g., Andrade v. AG, 270 F.3d 743, 751-52 (9th Cir. 2001), rev'd on other grounds Lockyer v. Andrade, 538 U.S. 63 (2003); Rinaldo v. Corbett, 256 F.3d 1276, 1279-80 (11th Cir. 2001); Haugen v. Nassau County Dep't. of Soc. Servs., 171 F.3d 136, 138 (2nd Cir. 1999); United States v. Smith, 182 F.3d 733, 735-36 (10th Cir. 1999); Listenbee v. City of Milwaukee, 976 F.2d 348, 349-51 (7th Cir. 1992).

[8]In its order denying Cohn's second motion for a new trial, the district court referred to Cohn's "further attempt to lard the record on appeal" and his "transparent attempt to bolster his post-verdict attack on his conviction for purposes of appeal (through

12

exclusively, on cases involving pro se appellants. Smith v. Barney was such a case. Our view "that the policy of construing notices of appeal liberally applies 'especially' to pro se filings" recognizes the appropriateness of a distinction between counseled and pro se litigants. United States v. Little, 392 F.3d 671, 681 (4th Cir. 2004).

Second, Cohn's Motion for Extension of Time failed to comply with the dictates of Rule 3(c)(1).

> Courts will liberally construe the requirements of Rule 3. . . . This principle of liberal construction does not, however, excuse noncompliance with the Rule. Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review. . . . Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal.

---

successor counsel)." J.A. 3506. In its order denying Cohn's fourth motion for a new trial, the district court again noted Cohn's manipulation of the post-trial process:

> Never in the living memory of this court has there been encountered a more blatantly transparent attempt by a convicted defendant to thwart the orderly progress of post-verdict criminal proceedings than is demonstrated by the manipulation evidenced in this record. . . . As for the serial motions for a new trial, the court has exhaustively considered the defendant's contentions and has repeatedly rejected them. It is perfectly obvious that successor counsel has simply shifted the defense strategy on the basis of 20/20 hindsight in an attempt to undo the jury verdict, which is a product of a fundamentally fair trial, during which [the defendant] vigorously contested the [G]overnment's evidence.

J.A. 3597-98.

<u>Barry</u>, 502 U.S. at 248 (citations omitted). "Notices 'shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.'" <u>Id.</u> Cohn's Motion for Extension of Time specifically failed to comply with Rule 3 because it did not "name the court to which the appeal is taken."[9] Fed. R. App. P. 3(c)(1)(C).

Finally, Cohn's Motion for Extension of Time failed to provide sufficient notice by clearly evincing an intent to seek appellate review. "[A] notice of appeal must specifically indicate the litigant's intent to seek appellate review . . . to ensure that the filing provides sufficient notice to other parties and the courts." <u>Barry</u>, 502 U.S. at 248. Although the motion contains the statement "Cohn desires to appeal [the district court's] judgment of

---

[9]We recognize that two other circuits have held that the failure of a notice of appeal to include the court to which the appeal is taken does not necessarily warrant dismissal for want of jurisdiction. See <u>Dillon v. United States</u>, 184 F.3d 556, 557 (6th Cir. 1999) (en banc) ("[W]here only one avenue of appeal exists, Rule 3(c)(1)(C) is satisfied even if the notice of appeal does not name the appellate court."); <u>United States v. Treto-Harlo</u>, 287 F.3d 1000, 1002 n.1 (10th Cir. 2002) ("[T]he United States Court of Appeals for the Tenth Circuit is the only Court to which the Government may take this appeal. The Government's failure to identify this Court in its notice of appeal, while careless if not inexcusable, did not prejudice or mislead the Defendant."). We note, however, that both cases involved a notice of appeal, not a motion purported to be its functional equivalent. In light of the other deficiencies in Cohn's Motion for Extension of Time that prevent it from the being the functional equivalent of a notice of appeal, we need not decide whether such a failure, standing alone, would warrant dismissal.

14

conviction and sentence, as well as the denial of his motion for a new trial based on newly discovered evidence;" J.A. 3464; it goes on to state that "counsel should be entitled to have sufficient time to consider any other issues and courses of action before the district court is by law divested of jurisdiction by the filing of a notice of appeal." J.A. 3465. Counsel did, in fact, consider, and pursue, other issues and courses of action, including filing three additional motions for a new trial, before filing a notice of appeal. Further, the last sentence of Cohn's motion signaled opposing counsel that he was not noticing an appeal at that point: "Cohn respectfully requests that the [district court] rule by February 10 in order to allow time to file notice should the [district court] deny this application." Id. Cohn's language and his actions indicated to the Government and the district court that he neither intended to divest, nor believed that he had divested, the district court of jurisdiction over the case by filing the Motion for Extension of Time. Given these signals, we can not conclude that the motion in question provided sufficient notice to the Government or the court that Cohn would appeal the district court's orders, three of which had not yet been issued.

For the foregoing reasons, Cohn's notice of appeal was untimely with respect to his judgment of conviction and first three motions for a new trial. We therefore grant the government's motion to dismiss the appeal with respect to them.

15

III.

Having concluded that our jurisdiction is limited to consideration of the district court's decision to deny Cohn's fourth motion for a new trial, we now review that decision. The following additional facts are relevant to that review. Several of Cohn's subordinates, among others, testified at trial: Jeffrey Augen, an employee of a predecessor telemarketing venture whom Cohn hired to work at Four Star; Suzanne Tikkanen, who oversaw the accounting staff that handled the client funding accounting at Four Star; and Daniel Connor, who Cohn asked to take over as president of the telemarketing scheme in its final months of operation. The testimony of these individuals reflected, among other things, that Cohn had all telemarketing scripts and fulfillment package contents sent to him for review when his predecessor headed the scheme; that Four Star eventually took over the operation; that Cohn made the determination as to what accounts would be paid, including how much would be available for refunds to dissatisfied consumers; that Cohn was aware that no agreements existed with companies to supply the benefits being offered in the program; that Cohn "micro-controlled" the telemarketing scheme, spending 70 to 80 percent of his business day on it; and that Cohn instructed Connor to send out fulfillment packages, despite the fact that they lacked the promised benefits.

Shortly after the jury returned its verdicts in the present case, Tikkanen filed a civil complaint against Cohn and Four Star

alleging sexual harassment and funds due. In connection with the civil suit, Cohn deposed Imtiaz Ahmad, a manager of the telemarketing operation at Four Star, and Henry and Linda Cote ("the Cotes"), the principals of an outside company retained as a telemarketing consultant. In his fourth motion for a new trial, Cohn identified selected portions of these depositions as newly discovered evidence that, had it been available at trial, would have refuted the testimony of Government witnesses concerning Cohn's knowledge of and involvement in the operation. Furthermore, Cohn argued that, because Ahmad had testified during the deposition that he had provided the same information to the Government when interviewed, and the Government had failed to disclose that information to Cohn, the Government had violated its duties under Brady v. Maryland, 373 U.S. 83 (1963).

The legal standard governing Cohn's claims with respect to the Cotes' testimony differs from that governing the claims with respect to Ahmad's testimony. United States v. Bales, 813 F.2d 1289 (4th Cir. 1987) sets forth the standard generally applied to a motion for a new trial based on newly discovered evidence:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

17

Id. at 1295 (internal quotation marks omitted). "Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate." United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). This standard applies to Cohn's claims concerning the testimony of the Cotes.

Cohn's claims concerning the testimony of Ahmad, however, allege not only that information in Ahmad's testimony was newly discovered evidence, but that the Government's failure to reveal its knowledge of that testimony constituted a Brady violation. When a Brady violation forms the basis of a Rule 33 motion, the proper legal standard is more favorable to the defendant than that identified in Bales. First, a new trial may be warranted even though the new evidence is merely impeaching. See United States v. Bagley, 473 U.S. 667, 676 (1985). Second, the evidence only need be such that, on a new trial, its disclosure would result in a reasonable probability of a different result, which is "shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1995). This more favorable standard, from Cohn's standpoint, applies to his claims concerning the testimony of Ahmad.

The district court's order denying Cohn's fourth motion for a new trial, although cursory, suggests that the court applied the more favorable Brady violation standard to all of Cohn's claims. United States v. Cohn, AMD 01-0374 (D. Md. April 21, 2004) ("Cohn's

18

repeated invocations of the Brady doctrine is [sic] not remotely supported by a substantial showing that the court's <u>confidence in the outcome of the trial</u> in this case should be called into question." (Emphasis added.))  Since it is more favorable, Cohn can not claim to have been prejudiced thereby, and our review of the record indicates that the district court properly denied the motion.

A.

The deposition testimony of the Cotes fails to meet the Bales standard.  That testimony primarily consists of speculation on the part of the Cotes as to Cohn's involvement in the telemarketing scheme and Linda Cote's recollection of discussions with Cohn.  To the extent that the testimony concerned conversations with Cohn, it could hardly be considered newly discovered because Cohn would have been aware of those conversations.  Furthermore, although Cohn alleges that he did not have access to the information because the Cotes would not speak to defense counsel, despite counsel's diligent efforts, the record contains no indication that those efforts involved any attempt at compulsory process to obtain what Cohn now claims to be "highly material" testimony.  Finally, no view of the evidence suggests that it probably would produce an acquittal at a new trial given the extensive contrary testimony of principals within the telemarketing scheme who were more familiar

19

with the day-to-day operation of the scheme and dealt with Cohn on a more regular basis.

                                    B.

The deposition testimony of Ahmad fails to meet the <u>Brady</u> standard.

> The strictures of Brady are not violated . . . if the information allegedly withheld by the prosecution was reasonably available to the defendant.  As we held in <u>United States v. Wilson</u>, "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the <u>Brady</u> doctrine." 901 F.2d 378, 381 (4th Cir. 1990).

<u>Hoke v. Netherland</u>, 92 F.3d 1350, 1355 (4th Cir. 1996) (citation omitted).

The allegedly exculpatory evidence consists of Ahmad generally indicating his lack of awareness regarding Cohn's daily participation in the telemarketing operation.  First of all, it is questionable whether this evidence is, in fact, exculpatory. Ahmad's lack of personal knowledge of Cohn's involvement does not contradict the affirmative testimony of other Cohn subordinates regarding his involvement.

Further, a reasonable defendant, knowing that a witness had helpful information, would have sought to obtain it.  Cohn had received a copy of Ahmad's grand jury testimony and knew that Ahmad was on the Government's witness list.  Cohn again complains that

20

Ahmad refused to speak to defense counsel about the criminal case. Yet, again, the record is devoid of evidence that Cohn attempted to compel Ahmad's participation.

Finally, Cohn fails to show that the disclosure of Ahmad's deposition testimony would result in a reasonable probability of a different result at a new trial, or that the Government's alleged failure to disclose the information undermines confidence in the outcome of the trial. For these reasons, we conclude that the district court did not abuse its discretion in denying Cohn's fourth motion for a new trial.

## IV.

In conclusion, this Court lacks jurisdiction to consider Cohn's appeal of the district court's judgment of conviction and sentence and denials of the first three motions for a new trial. Accordingly, those portions of the appeal are dismissed. Furthermore, the district court properly denied Cohn's fourth motion for a new trial. Accordingly, that district court order is affirmed.

<u>DISMISSED IN PART</u>;
<u>AFFIRMED IN PART</u>

21