RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SCOTT ISERT and TAMMY ISERT,
　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　*v.*

No. 04-5798

FORD MOTOR COMPANY,
　　　　　　　　　　*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00258—Charles R. Simpson III, District Judge.

Submitted: April 20, 2006

Decided and Filed: August 25, 2006

Before: BATCHELDER and SUTTON, Circuit Judges; FORESTER, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** David B. Gray, GOLDBERG & SIMPSON, P.S.C., Louisville, Kentucky, for Appellants. Carey P. DeDeyn, Joseph A. White, SUTHERLAND, ASBILL & BRENNAN LLP, Atlanta, Georgia, for Appellee.

---

**OPINION**

---

SUTTON, Circuit Judge. A few days before the deadline for filing a notice of appeal in this case, Scott and Tammy Isert, through their attorney, filed a motion in the district court asking for an extension of time in which "to file any Notice of Appeal." JA 407. The court denied the motion, and the Iserts do not challenge that ruling. What they do contend is that their motion for an extension of time contained sufficient information to satisfy the requirements for a notice of appeal under Rule 3(c) of the Federal Rules of Appellate Procedure. Because the motion failed to designate the judgment being appealed and otherwise failed objectively to convey an intent to appeal, it did not satisfy the form or function requirements of Rule 3(c). We dismiss the appeal for lack of appellate jurisdiction.

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

On April 4, 2001, Scott and Tammy Isert filed a complaint against Ford Motor Company, Scott's former employer, in the Jefferson County Circuit Court in Kentucky. The complaint raised several federal and state claims against Ford arising from an injury that Scott suffered at work and from the car company's failure to accommodate the work limitations created by the injury.

Ford removed the lawsuit to federal court. On June 26, 2003, the district court dismissed one of the state-law claims on the pleadings. And on March 30, 2004, the court granted summary judgment to Ford on the remaining federal and state claims. After this last ruling, the Iserts filed a motion to reconsider, which the district court denied on May 20, 2004.

On June 16, 2004, 27 days later and 3 days before the expiration of the notice-of-appeal deadline, *see* Fed. R. App. P. 4(a)(1)(A), the Iserts filed a motion for an extension of time in which to file an appeal. In its entirety, the motion read:

> Pursuant to Federal Rule of Appellate Procedure 4(a)(5)(A)(i), plaintiffs Scott and Tammy Isert ("Plaintiffs") move the Court for a thirty (30) day extension of time up to and including July 19, 2004, to file any Notice of Appeal. An Order granting this Motion is tendered herewith.
>
> WHEREFORE, Plaintiffs respectfully pray that their motion be granted and that the Order submitted herewith be entered.

JA 407. On June 30, 2004, the district court denied the motion.

That same day, June 30, 2004, 11 days after the notice-of-appeal deadline had come and gone, the Iserts filed a notice of appeal, which read in its entirety:

> NOTICE IS HEREBY GIVEN that the plaintiffs Scott and Tammy Isert, hereby appeal to the United States Court of Appeals for the Sixth Circuit from the district court's orders of June 26, 2003 (DN #59), March 30, 2004 (DN #74), and May 20, 2004 (DN[ ]#79).

JA 59.

On July 6, the Iserts filed a motion to reconsider the denial of the extension motion, arguing that "good cause existed" for the requested extension. JA 414. As the Iserts' attorney explained, the couple had asked for an extension because after the summary rejection of their claims, "the continued prosecution of the claims on appeal became an issue for the . . . [law] firm" given that the firm had expended "[h]undreds of hours" and "thousands of dollars." JA 413. "[T]here were election of remedies concerns," the attorney also noted, "because a separate appeal action of a workers' compensation benefits claim was and is pending." *Id*. On September 1, 2004, the district court denied the motion for reconsideration. It explained that the original extension "motion was not accompanied by a supporting memorandum as required by the Joint Local Rules of this court" and "revealed absolutely no cause or reason why the extension was necessary." D. Ct. Order at 1 (Sept. 1, 2004). The court concluded that the Iserts had "failed to demonstrate any reason or cause why the extension was necessary." *Id*. The Iserts have not filed an appeal with respect to the June 30, 2004 order denying their motion for an extension of time or with respect to the September 1, 2004 order denying their motion to reconsider the denial of the extension motion.

II.

A party seeking appellate review must comply with the "linked jurisdictional provisions" of Rules 3 and 4 of the Rules of Appellate Procedure. *Becker v. Montgomery*, 532 U.S. 757, 765 (2001). Rule 3(a)(1) says that "[a]n appeal . . . as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." Would-be appellants thus must complete two modest tasks before their appeals "may be taken": They must give "notice" of their appeal, and they must give that notice "in time."

As to timeliness, Rule 4(a)(1)(A) says that "the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."

As to notice, Rule 3(c) says:

(1) The notice of appeal must:

> (A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";

> (B) designate the judgment, order, or part thereof being appealed; and

> (C) name the court to which the appeal is taken.

The content requirements of Rule 3(c) serve two functions. They address fairness and "due process concerns by 'ensur[ing] that the filing provides sufficient notice to other parties and the courts.'" *United States v. Glover*, 242 F.3d 333, 336 (6th Cir. 2001) (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992)). And they address administrative concerns by "avoid[ing] inconsistency, vagueness and an unnecessary multiplication of litigation" caused by uncertainty over who has appealed and from what judgment. *Minority Employees of the Tenn. Dep't of Employment Sec., Inc. v. Tenn. Dep't of Employment Sec.*, 901 F.2d 1327, 1329 (6th Cir. 1990) (en banc); *see Glover*, 242 F.3d at 336. Uniting these considerations is notice—notice to the opposing party and the court that an appeal of a given order has been taken and that it has been taken to a certain court. An aspiring notice of appeal thus "must specify" not just any "party" but "the party . . . taking the appeal," Fed. R. App. P. 3(c)(1)(A); it must designate not just any court but "the court to which the appeal is taken," *id.* 3(c)(1)(C); and it must designate not just any order but "the . . . order [or orders] . . . being appealed," *id.* 3(c)(1)(B).

While the requirements of Rule 3(c)(1) serve important purposes and are mandatory and "jurisdictional in nature," *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988), *superseded by* 1993 amendments to Rule 3(c), functional rather than formalistic compliance is all that is required. As another subsection of Rule 3(c) warns, an appeal "must not be dismissed for informality of form or title . . . , or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). And as the Supreme Court has instructed, "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker*, 532 U.S. at 767. Courts thus "will liberally construe the requirements of Rule 3," *Smith*, 502 U.S. at 248, to permit notices of appeal "technically at variance with the letter of a procedural rule" but that amount to "the functional equivalent of what the rule requires," *Torres*, 487 U.S. at 316–17. *See also* Fed. R. App. P. 3(c) advisory committee's note ("The test established by the rule for determining whether such designations are sufficient is whether it is objectively clear that a party intended to appeal."); *id.* ("If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward.").

Three Supreme Court cases show the lengths to which courts may go in accepting technically out-of-order notices of appeal. In *Foman v. Davis*, 371 U.S. 178 (1962), the combination of "a timely but incomplete notice of appeal and a premature but complete notice" of appeal, *Becker*, 532 U.S. at 768 (describing the facts in *Foman*), satisfied Rule 3(c)(1)(C) where the "petitioner's intention to seek review of [the pertinent judgments] was manifest," *Foman*, 371 U.S. at 181. In *Smith v. Barry*, 502 U.S. 244 (1992), a document "specifically indicat[ing] the litigant's intent to seek appellate review," "filed within the time specified by Rule 4" and "giv[ing] the notice required by Rule 3," was "effective as a notice of appeal," even though it was "intended to serve as an appellate brief." *Id.* at 245, 248–49. And in *Becker v. Montgomery*, 532 U.S. 757 (2001), even though the appellant had failed to sign his notice of appeal, the court held that the document conveyed the requisite intent to appeal. *See id.* at 760 ("For want of a signature on a timely notice, the appeal is not automatically lost.").

While the Court, as these cases show, has generously construed documents to satisfy the requirements of Rule 3(c)(1), it has never reduced compliance to a matter of judicial grace and grace alone—permitting appeals even when the purported notice fails in form and function to satisfy Rule 3(c)(1). "This principle of liberal construction does not . . . excuse noncompliance with the Rule." *Smith*, 502 U.S. at 248. "[N]oncompliance," the Court has insisted, remains "fatal to an appeal," *id.*, for "[p]ermitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold," *Torres*, 487 U.S. at 315–16; *see id.* at 317–18 (holding that a court "may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met" and noting that any "harshness" in the application of these Rules "is imposed by the legislature and not by the judicial process") (internal quotation marks omitted).

Two of our decisions complete the picture, illustrating the line between compliant and non-compliant notices of appeal. In *Dillon v. United States*, 184 F.3d 556 (1999) (en banc), we held that a notice of appeal from the denial of a § 2255 petition, which failed to name the court to which the appeal was taken, nonetheless satisfied Rule 3(c)(1) because just one court—the Sixth Circuit—had authority to hear the appeal. "[W]hen there is only one possible appellate forum," we reasoned, "and no information or action contrary to the proper forum appears on the face of the papers, the filing of a notice of appeal has the practical effect of 'naming' that forum." *Id.* at 558. Under these circumstances, the court concluded, "'there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward' if, through inadvertence, an appellant has failed to name the court to which the appeal is taken." *Id.* (quoting Fed. R. App. P. 3(c) advisory committee's note).

In *United States v. Glover*, 242 F.3d 333 (6th Cir. 2001), by contrast, the would-be appellant failed to designate the order he wished to appeal. "Unlike the decision *where* to appeal," the court explained, "the decision *what* to appeal is left almost exclusively to the discretion of the appellant," and unlike the decision where to appeal "it generally is true that numerous potentially appealable issues have been generated by the district court before an appeal is taken." *Id.* at 336–37. Under these circumstances, the court reasoned that "no amount of liberal construction of the Rules can show that the Government's notice of appeal"—that "the United States . . . hereby request[s] a Protective Notice of Appeal in this Matter"—"complied with the requirements of Rule 3(c)" because the notice "provide[d] not even a clue as to what the Government seeks on appeal." *Id.* at 337. To rule otherwise, the court concluded, would "too frequently require this Court to sort through a morass of objective and subjective factors to meditate upon and divine the party's intended appellate targets." *Id.*

The Iserts' filings fall on the wrong side of this line. They filed two papers in this case, a motion for extension of time on June 16, 2004, and a notice of appeal on June 30, 2004. The district court entered the last appealed order in the case on May 20, 2004. While the June 30 notice of

appeal satisfied the requirements of Rule 3(c), it transgressed Rule 4's deadline. And while the June 16 motion for an extension of time complied with Rule 4, it failed to satisfy Rule 3(c).

In material part, the extension motion said that "[plaintiffs] move the Court for a thirty (30) day extension of time . . . to file any Notice of Appeal." JA 407. It does not designate the judgment being appealed, *see* Rule 3(c)(1)(B), and does not otherwise convey an intent to appeal. As in *Glover*, we cannot "excuse" the appellant's "failure to 'designate the judgment, order, or part thereof being appealed.'" 242 F.3d at 336. *Glover*, indeed, would seem to be the harder case. There, the appellant filed "a Protective Notice of Appeal," which at least gave notice of an intent to appeal something; here, the appellants filed a motion for "extension of time . . . to file any Notice of Appeal," which does not give notice, but conveys only ambivalence, about whether they wish to appeal at all.

The Iserts nonetheless persist that "'no genuine doubt exists about . . . what judgment'" they were appealing. Reply Br. at 2 (quoting *Becker*, 532 U.S. at 767). Yet wishing, even hoping (from the court's perspective), does not make it so. The Iserts could have appealed considerably more than one "judgment, order, or part thereof" because the district court issued at least three substantive appealable orders or judgments. Proving the point: the (untimely) June 30 notice of appeal designated three separate orders for appeal. The Iserts cannot escape the reality that they filed several state and federal claims, which turned on distinct factual premises and invoked different legal theories: The state-law intentional-infliction claim, for example, dealt with the June 1999 workplace injury, while the federal-law disability claims dealt with Ford's attempted accommodations in April and May 2000. The district court handled some claims through a judgment on the pleadings and others on summary judgment—and many of them on different days. Given the procedural and substantive complexities of the case, it takes more imagination than we have to explain how the Iserts' delphic motion for an extension of time—failing to designate any of myriad orders for appeal and requesting only an extension "to file *any* Notice of Appeal," JA 407 (emphasis added)—made it "objectively clear" what, if any, orders they wished to appeal, *Glover*, 242 F.3d at 336 (citing Fed. R. App. P. 3(c) advisory committee's note). The indefinite language of the motion captured the indefinite intention of the litigants.

Nor does our decision in *Dillon* offer the Iserts refuge. Even there, in permitting a notice of appeal that did not designate the court to which the appeal was taken, we noted that "when an appeal may be taken to *more than one* appellate court, failure to designate the court of appeal will result in dismissal of the appeal for lack of jurisdiction." *Dillon*, 184 F.3d at 558 (emphasis added). The same is true when more than one order may be the subject of the appeal, and the appellants have failed to signal which order they wish to appeal.

The Iserts' reliance on published and unpublished decisions of our court addressing motions for extensions of time qua notices of appeal fares no better. In *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir. 1990), the "notice of appeal was tendered to the district court clerk at the same time as the motion for enlargement of time." The court construed the extension motion as doing "all that is required by Federal Rule of Appellate Procedure 3(c)," then noted that even if the motion by itself had not sufficed to be "a timely notice of appeal," the simultaneous filing of a complete notice of appeal with the extension motion was "effective to confer jurisdiction on this court." *Id.* at 1040. The Iserts of course did not satisfy all of the requirements of Rule 3(c), whether through their motion or through the simultaneous filing of a notice of appeal. In *United States v. Hoye*, 548 F.2d 1271, 1273 (6th Cir. 1977) (per curiam), a criminal case, the court cryptically construed a motion for extension of time as a notice of appeal where the motion "clear[ly] assert[ed] . . . an intent to appeal" and "contained most of the essential facts required of a notice of appeal." 548 F.2d at 1273. We say "cryptically" because the court does not quote the motion or otherwise reveal its contents, though most importantly there is no suggestion that this criminal defendant had the option of appealing more than one judgment. *See also United States v. Gulley*, 29 Fed. Appx. 228, 230 (6th Cir. 2002)

(construing appellant's motion for extension of time as a notice of appeal where "it specifie[d] the party taking the appeal and the judgment being appealed"); *Hall v. Tenn. Dep't of Corr. Main Hosp.*, No. 86-5856, 1986 WL 18569, at *1 (6th Cir. Dec. 16, 1986) (construing a letter either as a motion for extension of time or as a notice of appeal where it "evince[d] an intent to appeal" and ultimately "complie[d] with the content requirements" of Rule 3(c)).

This result accords not only with what other federal courts have said in this area but also with what they have done. Since the Supreme Court decided *Smith v. Barry* in 1992, the other appellate courts (to our knowledge) have decided 13 cases addressing whether to construe a motion to extend time as a notice of appeal. In 10 cases, the courts construed the motions as notices of appeal. *See Bartlow v. United States*, 81 Fed. Appx. 168, 168 (9th Cir. 2003); *Buffaloe v. College Park Honda Co.*, No. 01-7174, 2002 WL 31545758, at *1 (D.C. Cir. Nov. 14, 2002); *United States v. Castro*, No. 01-20977, 2002 WL 31049481, at *2 (5th Cir. Sept. 5, 2002); *Andrade v. Attorney Gen. of Cal.*, 270 F.3d 743, 750–52 (9th Cir. 2001), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003); *Rinaldo v. Corbett*, 256 F.3d 1276, 1279 (11th Cir. 2001); *Bailey v. Carter*, No. 99-2548, 2000 WL 1012965, at *2 (7th Cir. July 21, 2000); *United States v. Smith*, 182 F.3d 733, 735–36 (10th Cir. 1999); *Haugen v. Nassau County Dep't of Soc. Servs.*, 171 F.3d 136, 138 (2d Cir. 1999); *Keplinger v. Kisner*, No. 93-7216, 1994 WL 83390, at *1 n.1 (4th Cir. Mar. 11, 1994); *Listenbee v. City of Milwaukee*, 976 F.2d 348, 350–51 (7th Cir. 1992). And in 3 cases they declined to do so. *See United States v. Cohn*, 166 Fed. Appx. 4, 9–10 (4th Cir. 2006); *Sanowski v. Ford Motor Credit Co.*, 59 Fed. Appx. 988, 988 (9th Cir. 2003); *Harris v. Ballard*, 158 F.3d 1164, 1166 (11th Cir. 1998). What matters here is that none of the cases held that a time-extension motion could satisfy Rule 3(c) without designating the judgment or order being appealed.

All of this belies any suggestion that a motion for an extension of time may never satisfy the requirements of Rule 3(c). As this circuit's cases show and as the many decisions from other circuits confirm, an extension-of-time motion frequently will satisfy the modest requirements of Rule 3(c). To be sure, a motion for an extension of time on its face might suggest subjective uncertainty about the party's desire to appeal. Why else seek more time to file a document that the attorney can complete in one sentence (with a few clauses)? But this view loses sight of the fact that it is "the notice afforded by a document, not the litigant's motivation in filing it, [that] determines the document's sufficiency as a notice of appeal." *Smith*, 502 U.S. at 249. *See id.* at 248 (courts "should not . . . rel[y] on [a party's] reasons for filing" a document); *Rinaldo*, 256 F.3d at 1280 (construing a motion for extension of time and holding that "[w]here it is objectively clear that a party intends to appeal, and each prong of Rule 3(c)(1) is fulfilled, the functional equivalence test is satisfied"); *Smith*, 182 F.3d at 735 (same); *Andrade*, 270 F.3d at 752 ("[A] timely motion for extension of time to file a notice of appeal may be considered the functional equivalent of a notice of appeal provided it gives notice of the three elements required by Rule 3(c)(1)."); *Hindes v. Fed. Deposit Ins. Corp.*, 137 F.3d 148, 156 (3d Cir. 1998) ("[I]f a litigant files a document, regardless of its title, within the time for appeal under [Rule] 4, it is effective as a notice of appeal provided that it gives sufficient notice of the party's intent to appeal.").

The problem in this case, then, was not just that the Iserts filed a motion for extension of time; it was that the motion gave no indication which judgment (among many) the Iserts wished to appeal. Courts can, and should, work overtime to excuse errors of form but they cannot simultaneously excuse errors of form *and* function without assuming authority to waive compliance with the Rules altogether. Hard though we have tried, we see no tenable way to salvage this appeal.

III.

Because the Iserts' motion for an extension of time failed as a matter of form and function to satisfy the requirements of Rule 3(c), we dismiss the appeal for lack of appellate jurisdiction.