**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0589n.06

**No. 09-3720**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DONALD EDWARD PRYOR,** | ) | |
| | ) | **FILED**<br><br>**Aug 19, 2011**<br><br>LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ERIC H. HOLDER, JR., Attorney General, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GIBBONS, STRANCH, and ROTH, Circuit Judges.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** After sending an allegedly threatening email to his employers, plaintiff-appellant Donald Edward Pryor was charged with one misdemeanor count of Telecommunications Harassment pursuant to Ohio Rev. Code Ann. § 2917.21(B). He was acquitted of this charge by a jury and filed suit in federal district court against numerous parties, alleging claims under the United States and Ohio Constitutions for unlawful search and seizure, denial of freedom of speech, and substantive due process violations. The parties filed dispositive motions, and the district court dismissed all of Pryor's claims. Pryor now appeals a district court order denying his motion to reconsider a previous order dismissing his claims against defendants Dr. Christina Genovese, Mark Charville, and Dr. Jeffrey Wagner. For the reasons that follow, we affirm.

---

[*]The Honorable Jane R. Roth, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

-1-

I.

Before his resignation in April 2007, Pryor worked as a part-time instructor of biology at the

Firelands campus of Bowling Green State University ("BGSU"). In February 2007, Pryor's mother

became seriously ill and was hospitalized, contributing to his personal stress as he attempted to

balance his mother's needs and the demands of teaching. Around this time, Dr. Genovese, a BGSU

biology professor, became critical of Pryor's work performance; after Pryor missed a class on

February 21 due to his mother's poor health, Dr. Genovese berated him in front of her students,

instructed him to email his students in advance of canceling a test, and stated that "we will deal with

your issues after your mommy is better." On March 21, Dr. Genovese reviewed Pryor's work by

sitting in on his class and allegedly "interrupted [him] numerous times during the class session."

Although Pryor was not given a copy of his performance evaluation, he states that, as of March 23,

the BGSU Firelands faculty had decided not to renew his teaching contract due to poor performance.

Pryor claims that Dr. Wagner, the BGSU Firelands Department Chair of Natural and Social Sciences,

"ignored vital procedures" and was unreceptive to his complaints about Dr. Genovese, describing

her as "harmless." He also claims that Dr. Genovese's "unprofessional behavior . . . created a hostile

work environment" during an emotionally difficult time.

On April 18, 2007, after Pryor learned that his mother would be placed in a skilled nursing

facility, Dr. Genovese agreed to teach his class. That evening, she emailed him to describe the

material covered during class and the recommended lessons for the remainder of the semester. She

concluded by noting that Pryor's "students were a delight . . . [a]lthough attendance was very light

. . [. .] I wonder why?" Distressed by both the tone of Dr. Genovese's email and his mother's illness,

Pryor responded to "let rightful discord be heard" and "to address the [longstanding] abuses . . . at

Firelands." His email, which was addressed to "[p]rofessionals at BGSU," stated in part:

> In light of the obscene problems and hardships that have been, for some odd reason, fallen my way. I can no longer continue on this semester.
>
> It seems that while working at this facility . . . my family and my very well-being & survival have all come under attack for whatever reason . . . I have been hit with bad vibe city.
>
> All I wish is for the exact . . . if not more so problems TO come to plague anyone who has had in their hearts opposition to me being here. Which again points to nutty statements such as below . . . and the pimping and priming of dirt and the attempt to milk the F students for info[] about what Mr. Pryor is or is not doing right . . . .
>
> THE LAST THING I WANTED WAS HELP WITH MY CLASS, I CAN HANDLE IT . . . HOWEVER MY LOVED ONES AND THEIR WELL BEING AND MY MENTAL STATE CAN NOT HANDLE ALL THE GARBAGE I HAVE BEEN TOSSED HERE . . . Firelands college . . . has amounted to debt . . . a lost home to pay for college and no money and now power. Which power is . . . I know I shouldn't say this . . . but exactly . . . what I seek . . . .
>
> MAY GOD PUNISH MY ENEMIES SINCE I CAN'T . . . . AND TO THE SHREWD MS. GENOVESE, I WILL GO WITH MY GUT VIBE AND SAY GO [expletive] YOURSELF . . . I RESIGN . . . .
>
> ME, I AM HERE TO WIN, TO GET WHAT I WANT AND TO WIN . . . NOT STRUGGLE OVER PEANUTS WHICH IS WHAT I SEEM TO BE FIGHTING FOR . . . .
>
> THE NUTS, WHICH I AM NOT ONE OF, ARE THOSE THAT ENSLAVE US, TO ADVOCATE THAT I WIN . . . YOU MUST LOSE . . . .

Dr. Genovese forwarded the email to Charville, the BGSU Director of Budget and Operations,

claiming that she felt threatened. Charville then contacted BGSU Legal Counsel and the Huron

Municipal Court.

On April 19, 2007, Dr. Genovese and Charville reported the incident to Deputy Sheriff Jeffrey Hippley of the Erie County Sheriff's Office, who reviewed a copy of the email. Hippley's investigative report stated that, in addition to the "veiled threats" contained in Pryor's email, Dr. Genovese and Charville noted that Pryor had been "acting strangely lately and . . . had to be asked to leave the buildings on campus late at night on several occasions recently, including one night that he was asked to leave at [3:30 a.m.] as the campus' policy is that everyone should be out at [2:30 a.m.] at night." The report also stated that, in light of the campus shootings at Virginia Polytechnic Institute and State University ("Virginia Tech") earlier that week, "faculty, particularly Dr. Genovese . . . are concerned."

That afternoon, Hippley and Captain Paul Sigsworth met with Lee McDermond, Law Director for the City of Huron, to further discuss the matter and to determine whether charges should be filed. After reviewing the email, McDermond advised that Pryor should be charged with one misdemeanor count of Telecommunications Harassment pursuant to Ohio Rev. Code Ann. § 2917.21(B). Hippley prepared and filed a complaint against Pryor with the Huron Municipal Court, an arrest warrant issued, and Pryor was arrested following a traffic stop that same day. Because of "the disturbing statements made by Mr. Pryor in the email to Dr. Genovese[] [and] reports of his erratic behavior at the time the email was sent," McDermond requested that Pryor receive a psychiatric examination through BGSU Firelands Counseling and Recovery Services as a condition of being released on bond. Huron Municipal Court Judge William R. Steuk imposed the examination as a condition of release, and it was completed on April 20, 2007.

McDermond also moved the municipal court for an order requiring Pryor to surrender any firearms within his control and permitting a search of Pryor's home and vehicle "to confiscate any such firearms or deadly weapons and hold same until further order." Judge Steuk ordered the Erie County Sheriff to perform the search of Pryor's vehicle and residence, to seize any firearms, and to "hold them until further order of this court." Captain Sigsworth executed the search on the afternoon of April 20, and no firearms were recovered.

On July 26, 2007, Pryor was acquitted by jury verdict of misdemeanor Telecommunications Harassment. Articles concerning the circumstances of Pryor's resignation and the ensuing charge were published in a local newspaper, the *Sandusky Register*.

## II.

In April 2008, Pryor, proceeding *pro se* and *in forma pauperis*, filed suit under various federal and state statutes for monetary relief against the United States Attorney General, a district United States Attorney, several employees of BGSU, several employees of the Erie County Sheriff's Department and Correctional Department, officials of Huron City, Huron Municipal Court Judge Steuk, the director of Firelands Counseling & Recovery Services, and the *Sandusky Register*. On July 25, 2008, the district court dismissed several parties *sua sponte*, including the United States Attorney General, the United States Attorney, BGSU General Counsel, three other BGSU defendants, the sheriff, the jail director, one Huron City official, Judge Steuk, and the director of BGSU Firelands, noting that Pryor had alleged "no facts to reasonably associate . . . any of these defendants to his claims for relief." Deputy Hippley and two other employees of the Sheriff's Department who had assisted in Pryor's arrest were likewise dismissed; the court reasoned that,

although Pryor mentioned these defendants in his complaint, he failed to "state the federal constitutional claim . . . upon which [he] intends to base his § 1983 action."

In the same order, the district court also dismissed various causes of action. Pryor's Eighth Amendment claim for cruel and unusual punishment, which was based upon the loss of companionship time with his mother during his arrest and the potential adverse effect upon future employment, failed because he was not a prison inmate. *See Barber v. City of Salem*, 953 F.2d 232, 235 (1992). His equal protection claim for gender discrimination failed because there was no evidence of disparate treatment or purposeful discrimination. And, Pryor's claim under 42 U.S.C. § 1983 against Doug Phares, the newspaper publisher, was dismissed because Phares was not a state actor and had not engaged in any behavior approximating state action. In addition, the court dismissed Pryor's claims under 42 U.S.C. §§ 1981, 1985, and 1986; the Health Insurance Portability and Accountability Act ("HIPAA"); various federal criminal statutes; and inapplicable state statutes. The court, however, permitted Pryor's suit to proceed under § 1983 against Dr. Genovese, Dr. Wagner, Charville (collectively, "the state defendants"), and McDermond for unlawful search and seizure, free speech violations, and the denial of substantive due process. The suit proceeded under state law against the state defendants, Phares, and the *Sandusky Register*.

Following the court's July 25 order, the remaining defendants were served and filed dispositive pleadings. On November 21, 2008, the district court granted the motions to dismiss filed by the state defendants, Phares, and the *Sandusky Register*.[1] The court concluded that, under Ohio

---

[1]Pryor has not appealed the district court's decision dismissing his claims for intentional infliction of emotional distress and harassment against the *Sandusky Register* and Phares.

Rev. Code Ann. § 2743.02(A)(1), Pryor waived his right to sue the state defendants in federal court by filing a "substantially duplicative" complaint on April 18, 2008, in the Ohio Court of Claims. *See Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 457–58 (6th Cir. 1998); *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) (*en banc*). In the alternative, the court determined that the state defendants were entitled to qualified immunity under federal law and under Ohio Rev. Code Ann. § 9.86. *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989).

On February 26, 2009, the district court granted McDermond's motion for summary judgment with respect to Pryor's state law claims for malicious prosecution and false arrest and his federal claims under § 1983 for unlawful search and seizure under the Fourth Amendment, denial of free speech under the First Amendment, and deprivation of substantive due process under the Fourteenth Amendment. As to the state law claims, the court found that McDermond was entitled to summary judgment because Pryor failed to present evidence demonstrating that McDermond acted with malice when he recommended that Hippley file the complaint and because he neither detained Pryor nor was the arresting officer. As to the federal claims, the court held that McDermond could not be held accountable "for any constitutional infirmity in the plaintiff's arrest" because he "simply authorized the filing of the complaint" but did not issue or execute the arrest or search warrants; Pryor's vague and conclusory contentions regarding the violation of his First Amendment rights were insufficient to show a genuine issue of material fact; McDermond's actions did "not rise to an actionable level of egregiousness" to maintain a substantive due process claim; and, in the alternative, McDermond was entitled to qualified immunity.

On April 15, 2009, Pryor filed a motion for reconsideration of the district court's November 21, 2008, order dismissing his claims against the state defendants, Phares, and the *Sandusky Register*. The district court denied this motion on May 27, 2009, stating that Pryor's motion "[did] not present new evidence or cite any new authority that could not have been called to [the court's] attention prior to [the court's] ruling" and, instead, merely asked the court "to re-do that which [it] already [had] done." The court entered final judgment dismissing the case and certifying under 28 U.S.C. § 1915(a)(3) that an appeal from its decision could not be taken in good faith.

On June 9, 2009, Pryor filed a timely notice of appeal, in which he appealed the district court's denial of his motion for reconsideration.

III.

We review a district court's order granting summary judgment and its denial of reconsideration of that order *de novo*. *Med. Mut. of Ohio v. K. Amalia Enters., Inc.*, 548 F.3d 383, 389–90 (6th Cir. 2008).[2] Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CMACO Auto. Sys., Inc. v. Wanxiang Am.*

---

[2]The proper standard of review is somewhat unclear in this case. "Generally, the denial of a motion to reconsider is reviewed for an abuse of discretion," but "when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, [we] conduct[] a *de novo* review using the same legal standard employed by the district court." *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004). In its November 21, 2008, order, the district court granted the state defendants' motion to dismiss. However, in its May 27, 2009, order denying reconsideration of the November 21 order, the court characterized its ruling as a grant of summary judgment. Because neither party has disputed this characterization, we will apply *de novo* review.

*Corp.*, 589 F.3d 235, 241–42 (6th Cir. 2009). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## IV.

Pryor argues that the district court erred by granting summary judgment to the defendants and dismissing his claims under state law for false arrest and malicious prosecution and under § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights. He urges this court to reverse the district court's decision "as to all the public officials involved, including Judge Steuk, Law Director Lee McDermond and Deputy Hippley and their respective sovereigns, the City of Huron, Ohio and Erie County, Ohio and the Erie County Sheriff's office" on the ground that a genuine issue of material fact exists. The state defendants maintain that the district court should be affirmed because Pryor has not raised claims against them in his appellate brief, because Pryor waived his claims against them by filing a substantially similar complaint in the Ohio Court of Claims, and because they are shielded by qualified immunity.

## A.

Although Pryor has appealed only the district court's May 27, 2009, order denying his motion for reconsideration, Pryor's appellate brief raises arguments against McDermond, Hippley, and Judge Steuk (collectively, "the local officials"), who are not mentioned in that order. Because "[t]he court must always consider its jurisdiction first and may not hear a cause over which it has no jurisdiction," we must first determine our jurisdiction over these claims. *United States v. Universal*

*Mgmt. Servs., Inc.*, 191 F.3d 750, 756 (6th Cir. 1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

Federal Rule of Appellate Procedure 3 is a jurisdictional rule governing the method for taking appeals as of right. *See* Fed R. App. P. 3; *Smith v. Barry*, 502 U.S. 244, 248 (1992) (stating that, despite the principle of liberal construction, "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review"); *Universal Mgmt. Servs.*, 191 F.3d at 756 (instructing that Rule 3 "is jurisdictional and may not be 'waived' by this court"). "[L]itigants are charged with the responsibility for complying with the Federal Rules of Appellate Procedure," and this court may not excuse non-compliance. *Maerki v. Wilson*, 128 F.3d 1005, 1008 (6th Cir. 1997); *Guy v. Lexington-Fayette Urban Cnty. Gov't*, 57 F. App'x 217, 223 (6th Cir. 2003); *see also Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 400 (2d Cir. 1997) (remarking upon "the importance of Rule 3(c)" and "the harsh and unfortunate consequences of overlooking it"). Although liberal construction of the rule's requirements is permissible, we have emphasized that "strict obedience to Rule 3(c) is warranted, even though it may have harsh results in certain circumstances." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) (internal quotation marks omitted); *see also Smith*, 502 U.S. at 248 ("This principle of liberal construction does not . . . excuse noncompliance with the Rule."); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317–18 (1988), *superseded by* 1993 amendments to Rule 3(c) (stating that, "although a court may construe the Rules liberally . . . it may not waive the jurisdictional requirements of Rule[] 3 . . . even for 'good cause shown'").

Rule 3(c)(1) provides that the notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The requirements of the rule serve "two

essential purposes." *Glover*, 242 F.3d at 336. First, Rule 3(c)(1) serves "administrative concerns by 'avoiding inconsistency, vagueness and an unnecessary multiplication of litigation' caused by uncertainty over who has appealed and from what judgment." *Isert v. Ford Motor Co.*, 461 F.3d 756, 759 (6th Cir. 2006) (internal editorial marks omitted) (quoting *Minority Emps. v. Tenn. Dep't of Emp't Sec.*, 901 F.2d 1327, 1329 (6th Cir. 1990) (*en banc*)). Second, it satisfies fairness and due process concerns "by 'ensur[ing] that the filing provides sufficient notice to other parties and the courts.'" *Glover*, 242 F.3d at 336 (quoting *Smith*, 502 U.S. at 248) (alteration in original).

In 1993, following the Supreme Court's decision in *Torres*, which held that the phrase "*et al.*" was insufficient to satisfy the requirement of Rule 3(c)(1)(A) that the notice of appeal must "specify the party or parties taking the appeal by naming each one," Rule 3(c) was amended "to conform more tightly to these administrative and due process concerns and to reduce the potential that an appeal might be dismissed where such concerns would not be significantly implicated." *Glover*, 242 F.3d at 336; *see also Dillon v. United States*, 184 F.3d 556, 558 (6th Cir. 1999) (*en banc*) (stating that the amendments to Rule 3(c) "were aimed at ameliorating the effect of Rule 3(c)(1)(A)" and expanding this rationale to apply to Rule 3(c)(1)(C), which requires parties to "name the court to which the appeal is taken"). The amendments sought "to soften the practical effect" of *Torres*'s holding. *Dillon*, 184 F.3d at 558.

However, the principle of generous construction "has never reduced compliance [with Rule 3(c)(1)] to a matter of judicial grace." *Isert*, 461 F.3d at 760. Thus, in *Glover*, this court held that it lacked jurisdiction to decide the would-be appellant's case when the appellant failed to designate the order it wanted to appeal. 242 F.3d at 336–37. We noted:

> Unlike the decision *where* to appeal, the decision *what* to appeal is left almost
> exclusively to the discretion of the appellant. Furthermore, it generally is true that
> numerous potentially appealable issues have been generated by the district court
> before an appeal is taken. . . . Thus, unlike the decision in *Dillon*—loosening as it
> did the requirement "to name the court to which the appeal is taken"— . . . a similar
> loosening of the requirement "to designate the judgment, order, or part thereof being
> appealed"—would, if approved, too frequently require this Court to sort through a
> morass of objective and subjective factors to meditate upon and divine the party's
> intended appellate targets.

*Id.*

Pryor's notice of appeal states that he is appealing from the "[m]otion for reconsideration . . . [d]ocument 62, filed 05/27/2009." In the May 27 order, the district court denied reconsideration of its November 21, 2008, order, in which it granted the state defendants' motion to dismiss. But, as the state defendants note, Pryor's appellate brief raises claims exclusively against the local officials, who are not mentioned in the May 27 or November 21 orders.[3] Thus, because Pryor has neither designated any orders pertaining to the local officials in his notice of appeal nor appealed from the final judgment, we lack jurisdiction to consider claims against the local officials.[4] *See Universal Mgmt. Servs.*, 191 F.3d at 756 (noting that "'[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only

---

[3]The district court dismissed the claims against Judge Steuk and Hippley in its July 25, 2008, order; granted summary judgment to McDermond on February 26, 2009; and entered final judgment at docket entry 63 on May 27, 2009.

[4]We further note that the district court's docket entry, generated by the clerk's office, which states that Pryor has appealed "from the 62 Order and 63 Judgment of 5/27/09" is insufficient to preserve Pryor's claims against the local officials. As stated above, Pryor's notice of appeal designates only docket entry 62, the district court's order denying reconsideration of its November 21 order.

the specified issues may be raised on appeal'" (alterations in original) (quoting *McLaurin v. Fisher*, 768 F.2d 98, 102 (6th Cir. 1985)).

B.

With respect to the state defendants, Pryor has not challenged either the district court's denial of his motion for reconsideration or the district court's underlying order dismissing his claims against them on the grounds of waiver under Ohio Rev. Code Ann. § 2743.02(A)(1) and qualified immunity. The state defendants contend that Pryor "waived his right to challenge the disposition of his claims against [them] by failing to make any arguments in support of those claims" on appeal, and we agree.

In this circuit, it is well-settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995) (internal quotation marks omitted); *see also Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000). Here, aside from the unsupported assertion in his statement of the issue that the district court erred in dismissing his claims against the state defendants, Pryor has not identified case law contradicting the district court's conclusions, nor has he cited the Ohio statutes on which the court relied. Moreover, Pryor's brief makes no argument as to why he did not forfeit his claims by filing suit in the Ohio Court of Claims or why the state defendants are not entitled to qualified immunity. Instead, these issues are omitted altogether. We therefore hold that Pryor has waived his claims against the state defendants by failing to develop his

argument with any specificity. *See, e.g.*, *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 558

(6th Cir. 2008); *Indeck*, 250 F.3d at 979.

V.

For the foregoing reasons, we affirm the district court.