NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0533n.06

Case No. 22-3523

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

USA PARKING SYSTEMS, LLC; USA PLAZA PARKING INCORPORATED,

    Plaintiffs-Appellants,

v.

EASTERN GATEWAY COMMUNITY COLLEGE; STORE MASTER FUNDING VI, LLC; STORE CAPITAL ACQUISITIONS, LLC; STORE CAPITAL CORPORATION,

    Defendants-Appellees.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Dec 20, 2023
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

</td></tr>
</table>

Before: SUTTON, Chief Judge; STRANCH and MATHIS, Circuit Judges.

SUTTON, Chief Judge. USA Parking appeals the dismissal of its claims against Eastern Gateway Community College and other participants in a complicated real estate transaction. The appellees counter that we lack jurisdiction because USA Parking's notice of appeal falls short of Appellate Rule 3. Recent amendments to that Rule make it clear that we can hear this appeal. But we affirm the dismissal of USA Parking's claims.

I.

USA Plaza Parking owned a parking garage in downtown Youngstown, Ohio, and managed it through its affiliate, USA Parking. The garage accommodates over 1,000 cars, and it houses retail businesses on the ground floor. Due to its prime location, visitors to the adjacent

Eastern Gateway Community College frequently park at the garage. In 2012, Eastern Gateway asked its financial and programming consultant, Higher Education Partners, to obtain a lease on the garage. USA Plaza agreed to lease the garage and 200 parking spaces to the consultant's local affiliate, HEP-EGCC Ohio or HEP for short.

Two years later, Eastern Gateway approached USA Plaza to purchase the garage, but it came up short on cash. HEP stepped in and agreed to buy the garage for $3 million. As a condition of the sale, HEP negotiated a separate management agreement with USA Parking: USA Parking would manage the garage and provide 600 reserved spaces for twenty years in return for HEP paying $180,000 a year. HEP could not terminate the agreement upon a transfer or sale of the garage. USA Parking meanwhile acknowledged that it did not have any possessory or property interest in the facility. Both parties retained the right to assign the management agreement.

Because HEP also lacked funds to purchase the garage with cash, it engineered a sales-leaseback with STORE Capital, a real-estate lender and investor. At the first step of this transaction, HEP sold its future interest in the garage to STORE for $5.5 million. HEP then directed USA Plaza to transfer the deed directly to STORE's affiliate, STORE Master Funding VI. Master Funding leased the garage back to HEP for about $500,000 a year. HEP also assured USA Parking that, if HEP defaulted on the lease and the management agreement ended, HEP would remain liable for all management fees and lost profits.

HEP proved to be the weakest link in this complicated chain of transactions. It failed to pay USA Parking its management fees on time and was in danger of breaching its lease with Master Funding. When HEP defaulted on the management agreement in 2017, USA Parking alerted Eastern Gateway, which agreed to take over the payments to maintain access to the garage and parking spaces. To avert this unfolding mess, Eastern Gateway sought to acquire the garage for

2

itself. Eastern Gateway received permission from the State to sell revenue bonds to fund the purchase. It then purchased the garage from Master Funding for $8.3 million in April 2020. To complete the deal, Master Funding terminated the sales-leaseback with HEP.

As the new owner, Eastern Gateway told USA Parking that it no longer needed its services and asked USA Parking to turn over all equipment and records associated with the garage's operation. USA Parking refused to vacate the garage. It instead sued Eastern Gateway, HEP, and Master Funding for breaching the management agreement and taking its property. Eastern Gateway responded by securing a preliminary injunction requiring USA Parking to leave the garage and adding counterclaims for trespass and other torts. HEP failed to respond to USA Parking's complaint, and the court entered default judgment for nearly $5.4 million.

After USA Parking amended its complaint to add USA Plaza as a plaintiff and affiliates of Master Funding and HEP as defendants, the district court dismissed all but HEP's affiliates from the case. USA Parking settled with HEP and its affiliates. Eastern Gateway then agreed to dismiss its counterclaims. The district court dismissed Eastern Gateway's counterclaims, and USA Parking timely filed a notice of appeal.

## II.

At the outset, Eastern Gateway and the other defendants ask us to dismiss this appeal for lack of jurisdiction. They claim that USA Parking's notice of appeal listed only the order dismissing Eastern Gateway's counterclaims, and they argue that there is nothing for us to review under the Federal Rules of Appellate Procedure. We disagree.

Notices of appeal exist to provide notice to an opposing party and to the court of appeals. *Isert v. Ford Motor Co.*, 461 F.3d 756, 758–59 (6th Cir. 2006). A notice must identify the parties taking the appeal, what judgment or order they appeal, and to what court they appeal. Fed. R. App.

3

P. 3(c)(1). Because the timely filing of a notice of appeal is "mandatory and jurisdictional," courts lack the ability to hear appeals when parties fail to comply with Appellate Rule 3(c). *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315–18 (1988) (quoting Fed R. App. P. 3 advisory comm. notes to 1967 adoption). But not all formalistic compliance is required if the notice functionally avoids misleading or prejudicing opposing parties. *See Becker v. Montgomery*, 532 U.S. 757, 765–67 (2001); *Isert*, 461 F.3d at 759.

Two recent amendments to Appellate Rule 3(c) further relax the standards for evaluating USA Parking's notice. One amendment provides that any order that "merge[s]" into those designated in the notice expressly falls within the scope of our review. Fed. R. App. P. 3(c)(4). This rule ensures that an appeal from a final judgment includes every interlocutory ruling that preceded it. Fed. R. App. P. 3 advisory comm. notes to 2021 amends.

A second amendment provides that the notice of appeal in a civil case automatically encompasses the final judgment if it designates an order that adjudicates all remaining claims of all remaining parties. Fed. R. App. P. 3(c)(5)(A). The Rules Advisory Committee promulgated this provision in response to concerns that a court could dismiss some claims in one order and then dismiss or grant summary judgment on the rest in a second order. Fed. R. App. P. 3 advisory comm. notes to 2021 amends. Some courts of appeals had refused to consider the first order when the notice listed only the second but did not refer to it as a final judgment. *Id.* The amendment clarifies that a notice listing the second order grants jurisdiction over the first one as well, even if the court separately issues a final judgment. *See* Fed. R. Civ. P. 58(a).

The revised rules confirm that USA Parking's notice of appeal establishes jurisdiction over the entire case. The district court previously dismissed USA Parking's claims against most of the defendants, and it had approved the dismissal of its remaining claims against HEP and its affiliates

after they settled with USA Parking. Eastern Gateway then agreed to dismiss its counterclaims, the final remaining claims in the case. The district court approved that dismissal in an order designated as the entry of judgment under Civil Rule 58. Under Appellate Rule 3(c)(4), as amended, USA Parking did not have to designate those other orders separately.

The defendants respond that we have previously dismissed notices of appeal that fail to list specific orders for lack of jurisdiction. *See, e.g.*, *Schramm v. LaHood*, 318 F. App'x 337, 341–44 (6th Cir. 2009) (per curiam). But those authorities predate the recent revisions to Rule 3.

The notice still does not suffice, the defendants respond, because they cannot make heads or tails of USA Parking's brief. We agree that USA Parking failed to comply with the standards for appellate briefing. The brief lacks proper discussion of the standard of review, Fed. R. App. P. 28(a)(8)(B), a certificate of compliance, Fed. R. App. P. 28(a)(10), and proper references to the record, Fed. R. App. P. 28(e), among other deficiencies. But shortcomings in a party's brief affect the scope of our review, not whether we have jurisdiction.

Eastern Gateway asks us to disregard USA Parking's entire brief based on those deficiencies. That is tempting. The brief is conclusory in some places and difficult to follow in others. The case nonetheless does not require such a sanction. It suffices in this case to treat any underdeveloped briefing as a forfeiture without resorting to the stiff sanction of dismissing the appeal.

### III.

USA Parking raises five issues on the merits. Should the district court have converted the motion to dismiss into a motion for summary judgment? Did the district court misinterpret the management agreement? Is Eastern Gateway estopped from denying responsibility? Did Eastern

Gateway commit a takings? And did Master Funding have any liability under the management agreement?

*Motion to dismiss.* USA Parking argues that the district court should have converted the defendants' motions to dismiss into motions for summary judgment. We review the district court's decision for an abuse of discretion. *Clark v. Stone*, 998 F.3d 287, 296 (6th Cir. 2021). When assessing a motion to dismiss a complaint for failure to state a claim, the district court normally restricts itself to the pleadings. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). When it looks to "matters outside the pleadings," it treats the motion to dismiss as a motion for summary judgment. Fed. R. Civ. P. 12(d). But this rule does not limit the court to the text of the complaint, answer, and reply. *See* Fed. R. Civ. P. 7(a). Documents attached to a pleading as exhibits count as part of the pleading itself. Fed. R. Civ. P. 10(c). The court also may consider public records, items appearing in the record of the case, and exhibits to the motion to dismiss if the complaint references them and they are central to its claims. *Gavitt*, 835 F.3d at 640.

The district court did not abuse its discretion when it concluded that it should not convert these motions to requests for summary judgment. USA Parking attached contracts, payment data, and other records to its amended complaint, thus incorporating them into the pleadings. The same goes for the contracts and legal materials attached to the defendants' answers.

USA Parking fails to point to any specific item that the district court should not have evaluated. It instead complains that the district court interpreted the management agreement in light of the exhibits attached to the defendants' pleadings. But USA Parking had already attached those contracts to its own complaint, and it concedes that the court could examine the pleadings and public records on a motion to dismiss. No abuse of discretion occurred.

6

*Management agreement.* USA Parking claims that, when Eastern Gateway acquired the garage from Master Funding, it assumed responsibility from HEP for the management agreement. We disagree. USA Parking entered into the management agreement with HEP. HEP agreed to pay USA Parking the management and parking fees in return for operational services. HEP could not terminate that agreement unless USA Parking defaulted, and it would remain in effect on any sale, lease, or other disposition of the garage. Neither Eastern Gateway nor Master Funding were party to that agreement, and HEP remained on the hook for performing the management agreement following both sales.

The purchase agreement between USA Plaza and HEP also did not create a binding obligation on Eastern Gateway. That contract imposed the condition that the two would enter into a separate management agreement containing specific terms and payments. And it allowed HEP either to assign its rights or nominate a party to take title to the garage. HEP negotiated the management agreement to close the real estate transaction, and it separately transferred its right to take the deed to Master Funding. HEP never assigned its obligation to maintain the management agreement to Master Funding.

USA Parking responds that the management agreement bound Eastern Gateway because it says that the agreement would "remain in effect and bind any successor in interest." R.60-7 at 4. Not so. That interest refers to the management agreement, not real ownership. How could it be otherwise, when HEP never owned the property and instructed USA Parking to deliver the deed to Master Funding? The clause preceding that quoted language notes that this agreement would remain in effect following any disposition of the garage, separating the two types of interest.

USA Parking claims that the purchase agreement established a restrictive covenant that bound future owners to uphold the management agreement. That argument also falls short. For a

restrictive covenant to arise under Ohio law, the parties must intend for the covenant to run with the land, the covenant must touch and concern the land, and there must be privity between the parties. *BM-Clarence Cardwell, Inc. v. Cocca Dev., Ltd.*, 65 N.E.3d 829, 835 (Ohio Ct. App. 2016). This purchase agreement says nothing about binding assignees or transferees of the property to maintain the management agreement, let alone imposing a covenant on them, whereas the management agreement at least requires HEP's "successor in interest" to maintain the deal. R.60-7 at 4; *cf. Kohl's Ill., Inc. v. Marion Cnty. Bd. of Revision*, 20 N.E.3d 711, 713–14 (Ohio 2014) (per curiam). Even if the management agreement touches and concerns the use of the garage, the purchase agreement's commitment to negotiate that deal prior to closing does not.

*Estoppel.* USA Parking also argues that Eastern Gateway should be estopped from denying responsibility for HEP's obligations because it voluntarily assumed those payments after HEP defaulted. While sovereign immunity bars this claim if operating the garage constitutes a governmental function, *Hortman v. Miamisburg*, 852 N.E.2d 716, 717, 721 (Ohio 2006), it does not apply if Eastern Gateway engaged in a proprietary function, *see Prisby v. City of Youngstown*, No. 94 C.A. 234, 1996 WL 465453, at *2 (Ohio Ct. App. Aug. 14, 1996). Regardless of how we resolve the question of sovereign immunity, this claim fails on its merits. *See McCroskey v. State*, 456 N.E.2d 1204, 1206 (Ohio 1983) (per curiam). USA Parking's theory of estoppel requires Eastern Gateway to have represented or promised that it was assuming this liability. *See Hortman*, 852 N.E.2d at 720. But USA Parking at most alleges that Eastern Gateway represented that "the payments were made . . . to prevent default under the Management Agreement and thus avoid the risk of the loss of the use of the . . . parking spaces." R.57 at 17–18. USA Parking did not allege that it relied on this statement to its detriment or that Eastern Gateway should have reasonably

8

foreseen that USA Parking would rely on this promise indefinitely. *See Shampton v. City of Springboro*, 786 N.E.2d 883, 887–88 (Ohio 2003).

*Takings clause violation.* The Fifth Amendment of the United States Constitution, as incorporated against the states by the Fourteenth Amendment, provides that "private property" may not "be taken for public use, without just compensation." The claimant must have an interest in the property at the time the taking occurs. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016). Because USA Plaza transferred the garage to Master Funding six years before Eastern Gateway purchased it, USA Plaza lacked any such interest in the property at the time Eastern Gateway acquired it. USA Parking also disclaimed any "possessory or real estate interest" in the garage as part of the management agreement. R.60-7 at 7. So on this record, it is unclear how Eastern Gateway could have committed a taking, and Appellants provide no legal authority in support of their argument.

*STORE defendants' liability.* For the same reasons that it asserted the contract bound Eastern Gateway, USA Parking claims that the management agreement bound STORE and Master Funding. Our conclusion that Eastern Gateway had no obligation under that agreement explains why these defendants face no liability either. STORE and Master Funding never bargained with USA Plaza for management services or reserved parking. HEP negotiated to sell its rights in the purchase agreement to STORE, and USA Plaza transferred title directly to Master Funding. The only party to these agreements that failed to live up to its contractual obligations was HEP, and USA Parking has already reached a settlement with HEP.

We deny the motion to dismiss for lack of jurisdiction and affirm the district court.